UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CECEIL L. COLLINS-PEARCY and | § | |
| MARK A. PEARCY, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:08-cv-02798 |
| | § | |
| MEDITERRANEAN SHIPPING | § | |
| COMPANY (USA) INC., | § | |
| | § | |
| Defendant. | § | |

---

MOTION FOR SUMMARY JUDGMENT OF
DEFENDANT MEDITERRANEAN SHIPPING COMPANY (USA), INC.

---

Respectfully Submitted:

/s/ Michael D. Mitchell
Michael D. Mitchell, Fed. ID No. 15330
Flyn L. Flesher, Fed. ID No. 873686
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
500 Dallas, Suite 3000
Houston, Texas 77002
(713) 655-5756
(713) 655-0020 (Fax)

ATTORNEYS FOR DEFENDANT
MEDITERRANEAN SHIPPING
COMPANY (USA), INC.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

NATURE AND STAGE OF THE PROCEEDING ........................................................1

STATEMENT OF FACTS .................................................................................2

SUMMARY OF THE ARGUMENT ....................................................................5

ARGUMENT ......................................................................................................6

    A.  Standard of Review ..................................................................................6

    B.  Plaintiff's FMLA Claims Fail Because Ms. Collins-Pearcy Was
        Never Protected By The FMLA ..............................................................7

    C.  Plaintiffs' Disparate Impact Claim Is Barred and Unsupported....................11

    D.  Plaintiffs' Racially Hostile Working Environment Claim Is Barred
        and Unsupported ....................................................................................12

    E.  Plaintiffs Cannot Establish A Prima Facie Case of Race, National
        Origin, Sex or Pregnancy Discrimination ............................................15

    F.  MSC Had Legitimate Reasons for Its Employment Decisions
        Concerning Plaintiffs and There Is No Evidence That the Reasons
        Are Pretexts for Discrimination ..........................................................27

    G.  Plaintiffs' Libel Claim Fails Because The Statements in Question
        Were Absolutely Privileged and Were Non-defamatory Opinions.................28

    H.  Plaintiffs' Fraud Claim Fails As a Matter of Law ...........................29

CONCLUSION ..............................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

CASES

American Tobacco Co. Inc. v. Grinnell,
    951 S.W.2d 420 (Tex. 1997)......................................................................................29

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)....................................................................................................6

Arora v. Starwood Hotels & Resorts Worldwide, Inc.,
    294 Fed. Appx. 159, No. 08-10344, 2008 WL 4410626 (5th Cir. Sept. 30, 2008) .....16, 18, 21

Arrieta v. Yellow Transportation, Inc.,
    No. 3:05-CV-2271-D, 2008 WL 5220569 (N.D. Tex. Dec. 8, 2008)......................................11

Babcock v. Bellsouth Advertising & Pub. Corp.,
    348 F.3d 73 (4th Cir. 2003) ...........................................................................................8, 9

Baehler v. Fritz Indus., Inc.,
    993 S.W.2d 181 (Tex. App.—Texarkana 1999, no pet.)............................................15, 23, 24

Baker v. Union Pac. R.R. Co.,
    145 F.Supp.2d 837 (S.D. Tex. 2001) ..............................................................................26

Barvick v. Cisneros,
    941 F.Supp. 1007 (D. Kan. 1996) ...................................................................................16

Binur v. Jacobo,
    135 S.W.3d 646 (Tex. 2004)...........................................................................................30

Bocalbos v. National Western Life Ins. Co.,
    162 F.3d 379 (5th Cir. 1998) .........................................................................................10

Brown v. Swett & Crawford of Texas, Inc.,
    178 S.W.3d 373 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ....................................29, 30

Burger v. Central Apartment Mgmt., Inc.,
    168 F.3d 875 (5th Cir. 1999) .........................................................................................20

Burlington Northern v. White,
    548 U.S. 53 (2006)........................................................................................................20

Butler v. Owens-Brockway Plastic Prods., Inc.,
    199 F.3d 314 (6th Cir. 1999) .........................................................................................8, 9

Byrd v. Lakeshore Hospital,
    30 F.3d 1380 (11th Cir. 1994) .......................................................................................24

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)........................................................................................6

Chaudhry v. Mobil Oil Corp.,
    186 F.3d 502 (4th Cir. 1999) .......................................................................23

Clark County Sch. Dist. v. Breeden,
    532 U.S. 268 (2001)......................................................................................24

Cochrane v. Houston Light & Power Co.,
    996 F.Supp. 657 (S.D. Tex. 1998) ...............................................................11

Collins v. Allied Pharmacy Mgt., Inc.,
    871 S.W.2d 929 (Tex. App.—Houston [14th Dist.] 1994, no pet.).............30

Cormier v. Pennzoil Exploration & Prod. Co.,
    969 F.2d 1559 (5th Cir. 1992) .........................................................17, 18, 21

Crow v. Rockett Special Utility Dist.,
    17 S.W.3d 320 (Tex. App.-Waco 2000, pet. denied)...................................30

Cruse v. G&J USA Pub.,
    96 F.Supp.2d 320 (S.D.N.Y. 2000) .............................................................16

Davis v. Dallas Area Rapid Transit,
    383 F.3d 309 (5th Cir. 2004) .......................................................................17

Diaz v. Gulf Coast Legal Foundation,
    No. H-88-0512, 1990 WL 282578 (S.D. Tex. Nov. 8, 1990) ......................28

Dorsey v. Pinnacle Automation Co.,
    278 F.3d 830 (8th Cir. 2002) .......................................................................13

Duckworth v. Pratt & Whitney,
    152 F.3d 1 (1st Cir. 1998)..........................................................................8, 9

Dupont-Lauren v. Schneider (USA), Inc.,
    994 F.Supp. 802 (S.D. Tex. 1998)...............................................................26

EEOC V. La. Office of Community Servs.,
    47 F.3d 1438 (5th Cir. 1995) .......................................................................17

Egbuna v. Time-Life Libraries, Inc.,
    153 F.3d 184 (4th Cir. 1998) .......................................................................23

Elsensohn v. St. Tammany Parrish Sherriff's Office,
    530 F.3d 368 (5th Cir. 2008) ...................................................................7, 10

Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.,
    51 S.W.3d 573 (Tex. 2001)..............................................................31

Fine v. GAF Chemical Corp.,
    995 F.2d 576 (5th Cir. 1993) ........................................................13

Garcia v. Women's Hosp. of Texas,
    143 F.3d 227 (5th Cir. 1998) ........................................................24

Gazda v. Pioneer Chlor Alkali Co., Inc.,
    10 F.Supp.2d 656 (S.D. Tex. 1997) ................................................8

George v. Aventis Pharm.,
    252 F.Supp.2d 599 (W.D. Tenn. 2003)..........................................13

Gilmartin v. KVTV-Channel 13,
    985 S.W.2d 553 (Tex. App. – San Antonio 1998, no pet.)...................29

Ginn v. Texas Wired Music, Inc.,
    252 F.3d 436 (5th Cir. 2001) ..................................................14, 15

Harvey v. Chevron U.S.A., Inc.,
    961 F.Supp. 1017 (S.D. Tex. 1997) ..............................................18

Hathaway v. General Mills, Inc.,
    711 S.W.2d 227 (Tex. 1986)...................................................30, 31

Henson v. Bell Helicopter Textron, Inc.,
    128 Fed. Appx. 387 (5th Cir. Apr. 18, 2005).................................10

Hill v. Fort Bend Indep. Sch. Dist.,
    275 F.3d 42 (5th Cir. 2001) ....................................................14, 15

Huckaby v. Moore,
    142 F.3d 233 (5th Cir. 1998) ..........................................................4

Hunt v. Rapides Health Care System, L.L.C.,
    277 F.3d 757 (5th Cir. 2001) ........................................................10

In Re Carnegie Center Assoc.,
    129 F.3d 290 (3rd Cir. 1997), cert. denied, 524 U.S. 938 (1998)..........24

James v. Brown,
    637 S.W.2d 914 (Tex. 1982)........................................................28

Kebiro v. Denton State School,
    24 F.3d 240, 1994 WL 242587 (5th Cir. May 27, 1994).................13

Kells v. Sinclair Buick – GMC Truck, Inc.,
   210 F.3d 827 (8th Cir. 2000) ................................................13

Krenek v. Abel,
   594 S.W.2d 821 (Tex. Civ. App.—Waco 1980, no writ) ........................28

Lawrence v. University of Texas Med. Branch at Galveston,
   163 F.3d 309 (5th Cir. 1999) ................................................21

Lee v. Kansas City Southern Railway Co.,
   __ F.3d __, 2009 WL 1856069 (5th Cir. Jun. 30, 2009)...................15, 22

Light v. Centel Cellular Co. of Texas,
   883 S.W.2d 642 (Tex. 1994).................................................30

Little v. Liquid Air Corp.,
   37 F.3d 1069 (5th Cir. 1994) ................................................6

Mason v. United Airlines, Inc.,
   274 F.3d 314 (5th Cir. 2001) ................................................11

Matta v. May,
   888 F.Supp. 808 (S.D. Tex. 1995) ...........................................28

Mauder v. Metropolitan Transit Auth. Of Harris County, Texas,
   446 F.3d 574 (5th Cir. 2006) ...........................................10, 24

McCoy v. City of Shreveport,
   492 F.3d 551 (5th Cir. 2007) ...............................................20

McCrary v. DPC Industries, Inc.,
   942 F. Supp. 288 (E.D. Tex. 1996)......................................14, 25

Medina v. Ramsey Steel Co., Inc.,
   238 F.3d 674 (5th Cir. 2001) ...............................................17

Merrill v. Cinas Corp.,
   941 F.Supp. 1040 (D. Kan. 1996).............................................16

Moody v. United States Sec'y of the Army,
   72 Fed. Appx. 235 (5th Cir. 2003)...........................................16

Musser v. Smith Protective Servs., Inc.,
   723 S.W.2d 653 (Tex. 1987)..................................................29

O'Neal v. Roadway Express,
   No. 05-30648, 2006 WL 1308083 (5th Cir. May 11, 2006)....................17

Okaye v. Univ. of Tex. Houston Health Science Ctr.,
 245 F.3d 507 (5th Cir. 2001) .................................................................17

Oswalt v. Sara Lee Corp.,
 74 F.3d 91 (5th Cir. 1996) ....................................................................10

Pacheco v. Mineta,
 448 F.3d 783 (5th Cir.), cert. denied, 127 S.Ct. 299 (2006) ..............................11, 12

Pegram v. Honeywell, Inc.,
 361 F.3d 271 (5th Cir. 2004) ...............................................................11, 19

Pennant v. Convergys Corp.,
 368 F.Supp.2d 1307 (S.D. Fla. 2005) ......................................................8, 9, 11

Perez v. MCI Worldcom Communications,
 154 F.Supp.2d 932 (N.D. Tex. 2001) .............................................................25

Pope v. ESA Servs., Inc.,
 406 F.3d 1001 (8th Cir. 2005) ...................................................................26

Quantum Chemical Corp. v. Toennies,
 47 S.W.3d 473 (Tex. 2001)....................................................................11, 15

Rachid v. Jack In the Box, Inc.,
 376 F.3d 305, 312 (5th Cir. 2004) ...............................................................27

Reno v. Metropolitan Transit Auth.,
 977 F.Supp. 812 (S.D. Tex. 1997)................................................................13

Richardson v. Monitronics Int'l, Inc.,
 No. 3:02-CV-2338-N, 2004 WL 287730 (N.D. Tex. Jan. 27, 2004), aff'd., 108 Fed.
 Appx. 908 (5th Cir. Sept. 9, 2004)................................................................8

Robertson v. Southwestern Bell Yellow Pages, Inc.,
 190 S.W.3d 899 (Tex.App.—Dallas 2006, no pet.)................................................29

Seppy v. City of Irving,
 No. Civ.A. 3:00-CV-386-R, 2002 WL 1592609 ...................................................25

Shah v. Wilci Systems, Inc.,
 126 F.Supp.2d 641 (S.D.N.Y. 2000).............................................................19

Smith v. City of Jackson,
 125 S.Ct. 1536 (2005).........................................................................12

Spinks v. Trugreen Landcare, L.L.C.,
 322 F.Supp.2d 784 (S.D.Tex. 2004) .............................................................26

Stith v. Perot Sys. Corp.,
122 Fed. Appx. 115 (5th Cir. Jan. 31, 2005) ...................................................................13, 16

Stout v. Baxter Healthcare Corp.,
No. 00-60542, 2002 U.S. App LEXIS 2573 (5th Cir. Feb. 19, 2002) .....................................23

Strickland v. Aaron Rents, Inc.,
No. EP-05-CA-013-DB, 2006 WL 770578 (W.D. Tex. Mar. 24, 2006) ...............................28

Stults v. Conoco, Inc.,
76 F.3d 651 (5th Cir. 1996) ......................................................................................................7

T.O. Stanley Boot Co., Inc. v. Bank of El Paso,
847 S.W.2d 218 (Tex. 1992)...................................................................................................32

Thiuri v.Schultz,
654 F.Supp. 46 (D.D.C. 1986) ...............................................................................................21

Troupe v. May Dept. Stores,
20 F.3d 734 (7th Cir. 1994) ....................................................................................................24

Turner v. Baylor Richardson Medical Center,
476 F.3d 337 (5th Cir. 2007) ..................................................................................................23

University of Texas v. Poindexter,
___ S.W.3d ___, 2009 WL 1896071 (Tex. App.—Austin, Jul. 3, 2009, n.p.h.) .........11, 13, 25

Urbaro v. Continental Airlines, Inc.,
138 F.3d 204 (5th Cir. 1998) ..................................................................................................24

Venkatraman v. REI Sys., Inc.,
417 F.3d 418 (4th Cir.2005) ...................................................................................................19

Wal-Mart Stores Inc. v. Lane,
31 S.W.3d 282 (Tex. App. -- Corpus Christi 2000, pet. denied) ............................................28

Walker v. Elmore County Bd. of Educ.,
379 F.3d 1249 (11th Cir. 2004) .......................................................................................8, 9, 11

Watts v. The Kroger Co.,
170 F.3d 505 (5th Cir. 1999) ..................................................................................................14

Willemssen v. The Conveyor Co.,
359 F.Supp.2d 813 (N.D. Iowa 2005).....................................................................................8, 9

Willis v. Coca Cola Enterprises, Inc.,
445 F.3d 413 (5th Cir. 2006) ..................................................................................................15

Zhang v. China Gate, Inc.,
  No. C07-964RSM, 2007 WL 2677136 (W.D. Wash. Sept. 7, 2007) ......................................19

## STATUTES

8 U.S.C. § 1101(a)(15)(H)(i)(b) .................................................................................................18

8 U.S.C. § 1182(n)(1) ................................................................................................................18

8 U.S.C. § 1182(n)(2)(A)-(n)(5)(A) ..........................................................................................18

29 U.S.C. § 2611(2)(A).............................................................................................................7, 9

42 U.S.C. § 1981........................................................................................................................11, 22

42 U.S.C. § 2000e-2(K) .............................................................................................................24

TEX. LAB. CODE§ 21.106 ...........................................................................................................24

## OTHER AUTHORITIES

20 C.F.R. §§ 655.815, 655.820, 655.840 ...................................................................................19

29 C.F.R. § 825.110(d) ..............................................................................................................8, 9

FED. R. CIV. P. 56(c) ..................................................................................................................6

FED. R. EVID. 801-02 .................................................................................................................16, 18, 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CECEIL L. COLLINS-PEARCY and | § | |
| MARK A. PEARCY, | § | |
| | § | |
|     Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 4:08-cv-02798 |
| | § | |
| MEDITERRANEAN SHIPPING | § | |
| COMPANY (USA) INC., | § | |
| | § | |
|     Defendant. | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Mediterranean Shipping Company (USA) Inc. ("MSC") files this Motion for Summary Judgment and respectfully shows the Court the following:

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs filed this employment case on August 19, 2008, in Texas state court. MSC removed the case to this Court on September 19, 2008. Plaintiffs allege the following claims in their Third Amended Complaint:

1. Race discrimination and "racially hostile work environment" under 42 U.S.C. § 1981 and the Texas Labor Code;
2. National origin discrimination under the Texas Labor Code;
3. Retaliation under 42 U.S.C. § 1981 and the Texas Labor Code;
4. Fraud under Texas common law; and
5. Libel under Texas common law.

Additionally, Plaintiff Ceceil Collins-Pearcy alleges the following claims:

6. Sex discrimination under the Texas Labor Code;
7. Pregnancy discrimination under the Texas Labor Code;
8. Family and Medical Leave Act ("FMLA") retaliation and interference.

MSC denies Plaintiffs' allegations. The deadline for completion of discovery is October 30,

2009.  The deadline for filing dispositive motions is November 30, 2009.  Docket call is set for March 17, 2010.

<h3 style="text-align:center"><u>STATEMENT OF FACTS</u>[1]</h3>

MSC is a privately owned shipping line engaged in worldwide container transport. (<u>See</u> Ruiz Declaration, attached to the Appendix as Exhibit C, at ¶ 2.)  MSC hired Plaintiffs on June 5, 2006.  (Appx., Ex. A at 34-35; Appx., Ex. B at 28-30.)[2]  Both Plaintiffs are citizens of Jamaica who, at the time of their hire, were authorized to work in the United States for one year.  (Appx., Ex. A at 60, 62.)

Plaintiff Ceceil Collins-Pearcy's initial assignment was in MSC's Intermodal department.  (Appx., Ex. A at 66-67.)  Subsequently, she worked in the Equipment department and the Freight Cashier department.  (<u>Id.</u>)  While Ms. Collins-Pearcy had different immediate supervisors during her tenure in the aforementioned departments, her ultimate supervisor throughout her employment was Mr. Jim Morrison, MSC's Assistant Vice President and the head of the Houston office.  (<u>Id.</u> at 74-75.)

Plaintiff Mark Pearcy was employed in MSC's Export Documentation department, Import Customer Service department, and Far East Import department.  (Appx., Ex. B at 39-45.)  He spent approximately three months in each department, and he had a different supervisor during his time in each department.  (<u>Id.</u>)  Mr. Pearcy's supervisor in the Import Customer Service department was an African-American man.  (<u>Id.</u> at 41.)

---

[1] The evidence cited herein is contained in Defendant's Appendix of Summary Judgment Evidence, which is being filed contemporaneously with this Motion.

[2] Relevant excerpts from the depositions of Ceceil Collins-Pearcy and Mark Pearcy are attached to the Appendix as Exhibits A and B, respectively.

From virtually the outset of their employment with MSC, both Plaintiffs exhibited severe performance and attendance deficiencies.  For example, Ms. Collins-Pearcy's job duties included balancing vessels during their arrival to and departure from United States ports to ensure that they left the United States with empty shipping containers.  (Appx., Ex. A at 68-69.) In September 2006, Ms. Collins-Pearcy mistakenly released a container that she should not have released, resulting in MSC incurring penalties and fines totaling approximately $395,000. (Appx., Ex. C at ¶ 2.)[3]  In an email dated February 9, 2007, Mr. Morrison gave the following assessment of Ms. Collins-Pearcy's performance:

> Ceceil worked in the import Intermodal Gulf dept until recently where she was moved to the Equipment department.  Ceceil handled the rail moves for the Gulf Intermodal group and is currently in the Logistics group of equipment control. Her work in both departments has been average at best.  To date she has not excelled in either department.  Honestly, we expected a lot from Ceceil given her educational background, but so far we have not realized these hopes.  She understands what she learns but to date, she is still very slow for someone with similar time of service.  We have spoken to her about lateness and the need for her to be here on time.

(See Morrison Email dated 02/09/07, attached to the Appendix as Exhibit D.)

As the last sentence in the quoted passage suggests, Ms. Collins-Pearcy's attendance and punctuality were substandard.  Ms. Collins-Pearcy was not eligible for paid leave for the first 90 days of her employment with MSC.  (Appx., Ex. C at ¶ 3; MSC Personal Days Policy, attached to the Appendix as Exhibit E.)  Yet, she was absent for two days during that period.  (Appx., Ex. C at ¶ 3; Ruiz Email dated 02/14/07, attached to the Appendix as Exhibit F.)  Further, from September 5, 2006 (i.e., the first day she was eligible for paid time off) through December 2006, she missed approximately 13 days of work.  (Appx., Ex. C at ¶ 3; Appx., Ex. F.)  From

---

[3]  Subsequently, MSC was able to mitigate the penalties to approximately $6,200, which MSC paid.  (Id.)

January 1, through February 14, 2007, she took an additional 10.5 days off work.  (Appx., Ex. C at ¶ 3; Appx., Ex. F.)

MSC had similar concerns with Mr. Pearcy's performance and attendance.   On December 6, 2006, Ms. Darlene Ruiz (who interviewed Plaintiffs) sent an email to Mr. Paolo Magnani, MSC's Vice President, stating the following:

> Unfortunately the job performance and attitude is bad.   He is in Herve's department and for Herve to be frustrated with this guy is amazing.   One example today, Ceceil was sick and she left.   *Mark left too but he failed to tell anybody.  Everytime Ceceil is sick and leaves or calls in sick so does Mark.*  And he shows no interest in learning anything.

(Appx., Ex. C at ¶ 4; Ruiz Email dated 12/06/06, attached to the Appendix as Exhibit G.) Because of Mr. Pearcy's conduct (i.e., leaving without telling anyone), Mr. Pearcy was issued a written warning.  (Appx., Ex. B at Ex. 8.)

Based on Plaintiffs' history of performance and attendance problems, on February 14, 2007, MSC decided not to seek to sponsor them for renewed work visas.  (Appx., Ex. C at ¶ 5; Magnani Email dated 02/14/07, Appx. at Ex. F; Appx., Ex. G.)

One month after MSC decided not to seek to sponsor renewed work visas for Plaintiffs, Ms. Collins-Pearcy began a maternity leave.   That leave ran from March 14, 2007 to May 21, 2007.  (Appx., Ex. A at 41-42, 84.)  Ms. Pearcy began (and ended) her maternity leave before she reached her one-year anniversary of employment with MSC.[4]  Ms. Pearcy was paid her full salary throughout the time that she was off work on her maternity leave.  (Appx., Ex. A at 83.)

A couple of days before Ms. Collins-Pearcy began her maternity leave, MSC held a baby shower for Ms. Collins-Pearcy and encouraged MSC employees to buy gifts for Plaintiffs.

---

[4] MSC hired Plaintiffs on June 5, 2006.  (Appx., Ex. A at 34-35).  Thus, Ms. Collins-Pearcy would not have reached her one-year anniversary of her hire date with MSC until June 5, 2007.

(Appx., Ex. C at ¶ 6; Garboggini Email dated 03/09/07, attached to the Appendix as Exhibit H.) Several MSC employees, including Ms. Ruiz, purchased gifts for Plaintiffs.  (Collins-Pearcy Email dated 03/12/07, attached to the Appendix as Exhibit I; Mark Pearcy Email dated 03/23/07, attached to the Appendix as Exhibit J.)  Ms. Pearcy admits that several other female employees were pregnant and took maternity leave at the same time she was pregnant, but none of the other employees were discharged.  (Appx., Ex. A at 72-73.)

Plaintiffs contend that they were discharged on or about June 4, 2007.  However, it is undisputed that Plaintiffs' work authorizations expired on June 4, 2007.  (Appx., Ex. A at 69 and Ex. 13; Appx., Ex. B at 20 and Ex. 6.)  Thus, Plaintiffs' employment with MSC ceased because Plaintiffs were no longer able to provide MSC with the requisite work authorizations for them to be legally employed in the United States.  (Appx., Ex. C at ¶ 7.)

## SUMMARY OF THE ARGUMENT

Ms. Collins-Pearcy's FMLA claims fail because Ms. Collins-Pearcy was never protected by the FMLA.  Plaintiffs' disparate impact, hostile work environment, and retaliation claims are barred because Plaintiffs did not assert those claims in their EEOC charges, and they fail on the merits because there is no evidence supporting any of those claims.  Plaintiffs' disparate treatment claims fail because there is no evidence of disparate treatment.  Ms. Collins-Pearcy asserts discriminatory unequal pay, but there is no evidence that any similarly situated employee was paid more than she was.  Likewise, Plaintiffs assert failure to promote, but there is no evidence that any similarly situated employee was promoted.  Similarly, Plaintiffs' allegation that MSC refused to sponsor them for visas is barred by their failure to exhaust

administrative remedies, and Plaintiffs cannot establish a *prima facie* case because there is no evidence of an adverse employment action or disparate treatment. Plaintiffs discriminatory discharge claim likewise fails because Plaintiffs cannot establish a *prima facie* case. Further, MSC had legitimate nondiscriminatory reasons for their employment decisions regarding Plaintiffs, and there is no evidence of pretext. Plaintiffs' libel claim is barred by absolute privilege and unsupported by the evidence. Finally, Plaintiffs' fraud claim fails because Plaintiffs had no justifiable basis to rely on an alleged promise of continued employment.

## ARGUMENT[5]

### A.     Standard of Review.

MSC is entitled to summary judgment if the evidence shows "that there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c).[6] MSC bears the initial burden of "informing the Court of the basis of its motion," and identifying portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Plaintiffs must then "go beyond the pleadings" and identify "specific facts" in the record "showing that there is a genuine issue for trial." Id. at 324. "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' … by 'conclusory allegations,' … by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Plaintiffs must "identify specific evidence in the record,"

---

[5] Unpublished cases cited herein are attached to this Motion.

[6] A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

and "articulate the precise manner" in which that evidence supports their claims.  Stults v.

Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996).

**B.     Plaintiffs' FMLA Claims Fail Because Ms. Collins-Pearcy Was Never Protected by the FMLA.**

Ms. Collins-Pearcy took time off work for maternity leave beginning on March 14,

2007.  (Appx., Ex. A at  41).  She returned to work on May 21, 2007.  (Appx., Ex. A at

42, 84).  She contends that the aforementioned leave time was protected by the FMLA,

(Third Amended Complaint at ¶ 16), and she contends that, following her return to work,

she was reassigned to the Freight Cashier Department, denied basic tools to perform her

job, and informed that the company would not sponsor her for a renewed work visa,

resulting in her employment termination.  (Appx., Ex. A at 172-73).  Mr. Pearcy admits

that he has no claim for substantive violations of the FMLA (because he never took

FMLA leave), (Appx., Ex. B at 65-66), but he asserts that MSC retaliated *against him*

because *his wife* allegedly took FMLA leave.  (Appx., Ex. B at 66, 99).  As explained

below, however, Plaintiffs' FMLA claims fail for the simple reason that Ms. Collins-

Pearcy's March 14-May 21, 2007 leave was not protected by the FMLA as a matter of

law.[7]

The FMLA defines "eligible employee" as "an employee who has been employed

. . . for at least 12 months by the employer with respect to whom leave is requested …."

See 29 U.S.C. § 2611(2)(A).  **The determination of whether an employee is "eligible"**

---

[7] In addition, Mr. Pearcy's allegation that MSC retaliated *against him* because *his wife* took FMLA leave does not state a claim for FMLA retaliation.  Elsensohn v. St. Tammany Parish Sherriff's Office, 530 F.3d 368, 371, 373-74 (5th Cir. 2008) (holding that a plaintiff could not bring a retaliation claim against his employer under the FMLA based on his wife's allegedly protected activities).

for FMLA-protected leave is made *as of the date the leave is to start*.  See 29 C.F.R. §

825.110(d) ("The determination of whether an employee … has been employed by the

employer for a total of at least 12 months must be made as of the date the FMLA leave is

to start."); Walker v. Elmore County Bd. of Educ., 379 F.3d 1249, 1253 n.10 (11th Cir.

2004) (The determination of whether an employee has been employed for at least twelve

months for FMLA eligibility "must be made as of the date leave commences."); Babcock

v. Bellsouth Advertising & Pub. Corp., 348 F.3d 73, 77 (4th Cir. 2003) (same); Butler v.

Owens-Brockway Plastic Prods., Inc., 199 F.3d 314, 316 (6th Cir. 1999) (holding that

employee must be eligible at time the leave starts, rather than at time of adverse action);

Duckworth v. Pratt & Whitney, 152 F.3d 1, 8 (1st Cir. 1998) (same); accord Willemssen

v. The Conveyor Co., 359 F.Supp.2d 813, 818-19 (N.D. Iowa 2005); Pennant v.

Convergys Corp., 368 F.Supp.2d 1307, 1310 (S.D. Fla. 2005); Richardson v. Monitronics

Int'l, Inc., No. 3:02-CV-2338-N, 2004 WL 287730, at *2 (N.D. Tex. Jan. 27, 2004) ("The

medical leave taken by Richardson during early 2001 clearly does not qualify as FMLA-

eligible leave. Richardson was not an 'eligible employee' for FMLA leave until July 10,

2001, her one year anniversary of employment with Monitronics."), aff'd., 108 Fed.

Appx. 908 (5th Cir. Sept. 9, 2004).  Indeed, this Court has previously recognized that

timing is critical in determining whether a plaintiff was an eligible employee under the

FMLA.  See Gazda v. Pioneer Chlor Alkali Co., Inc., 10 F.Supp.2d 656, 673-75 (S.D.

Tex. 1997) **(Atlas, Judge)** (holding that plaintiff was not an "eligible" employee under

the FMLA because the employer did not employ 50 or more employees within 75 miles

8

of plaintiff's worksite *at the time the plaintiff gave the employer notice of the need for leave)*.

In this case, the maternity leave for which Ms. Collins-Pearcy asserts she was entitled to FMLA protection began on March 14, 2007.  (Appx., Ex. A at 41).  However, **it is undisputed that MSC hired Ms. Collins-Pearcy on June 5, 2006.**  (Appx., Ex. A at Ex. 12; Plaintiff's Opposition to Defendant's Motion for Sanctions Under Rule 11 [Doc. # 28], at 2).  **June 5, 2006 was less than 12 months before March 14, 2007.** Therefore, **at the time Ms. Collins-Pearcy's leave began, she was not entitled to FMLA protection because she had not been employed by MSC for at least 12 months.**  Accordingly, Ms. Collins-Pearcy was not an eligible employee under the FMLA.  See 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(d); Walker, 379 F.3d at 1253 n.10; Babcock, 348 F.3d at 77; Butler, 199 F.3d at 316; Duckworth, 152 F.3d at 8; Willemssen, 359 F.Supp.2d at 818-19; Pennant, 368 F.Supp.2d at 1310.

Moreover, Ms. Collins Pearcy did not become entitled to FMLA protection **at any point** during her leave because her leave ended less than 12 months after she was hired.[8] Specifically, Ms. Collins-Pearcy admits that she returned to work on May 21, 2007. (Appx., Ex. A at 42, 84).  May 21, 2007 was less than 12 months before June 5, 2006. Thus, the maternity leave that Ms. Collins-Pearcy took between March 14, 2007 and May 21, 2007 was not protected by the FMLA as a matter of law.  Accordingly, the acts that

---

[8] 29 C.F.R. § 825.110(d) and some courts have provided guidance regarding how to treat situations in which an employee is ineligible for FMLA protection at the beginning of a leave period but becomes eligible during the same leave period.  However, that situation is not presented here because Ms. Collins-Pearcy was not eligible for FMLA protection at any point during her maternity leave.

Ms. Collins-Pearcy alleges MSC took following her leave do not and cannot state a claim for any violation of any FMLA substantive rights.  See Oswalt v. Sara Lee Corp., 74 F.3d 91, 93 (5th Cir. 1996) (holding that plaintiff cannot maintain an FMLA claim where his leave was not protected by the FMLA); Henson v. Bell Helicopter Textron, Inc., 128 Fed. Appx. 387, 392 (5th Cir. Apr. 18, 2005) (same).

Similarly, the adverse actions alleged by Plaintiffs do not support a claim for FMLA retaliation[9] because Plaintiffs did not engage in any conduct protected by the FMLA.  To establish a *prima facie* case of retaliation under the FMLA, Plaintiff must show (1) **she was protected under the FMLA**, (2) she suffered an adverse employment decision, and either (3a) that she was treated less favorably than an employee who had not requested FMLA leave, or (3b) **the adverse decision was made because she took FMLA leave**.  Hunt v. Rapides Health Care System, L.L.C., 277 F.3d 757, 768 (5th Cir. 2001); Bocalbos v. National Western Life Ins. Co., 162 F.3d 379, 383 (5th Cir. 1998). Thus, an employer is entitled to summary judgment in its favor where the employee cannot prove that she engaged in any conduct protected by the FMLA.  Elsensohn, 530 F.3d at 372-73 (5th Cir. 2008).

Plaintiffs cannot establish the first or last elements of the *prima facie* case because, as explained above, they cannot show that the maternity leave Ms. Collins-Pearcy took between March 14, 2007 and May 21, 2007 was protected by the FMLA as a matter of

---

[9] "[T]he FMLA contains two distinct provisions."  Mauder v. Metropolitan Transit Auth. Of Harris County, Texas, 446 F.3d 574, 580 (5th Cir. 2006).  "The first provision of the FMLA creates a series of entitlements or substantive rights."  Id.  "An employee's right to return to the same position after a qualified absence falls under this category." Id.  "The second provision of the FMLA is proscriptive, and protects employees from retaliation or discrimination for exercising their rights under the FMLA."  Id.

law.  In other words, because Plaintiffs did not engage in any conduct protected by the

FMLA, Plaintiffs cannot maintain an FMLA retaliation claim.  See Walker, 379 F.3d at

1253 (the FMLA "does not protect an attempt to exercise a right that is not provided by

FMLA, i.e., the right to leave before one becomes eligible therefor."); Pennant, 368

F.Supp.2d at 1313 ("an employee who is ineligible for FMLA leave does not have a valid

cause of action for retaliation under the FMLA.").    Therefore, Plaintiff's FMLA

retaliation claim fails.

**C.    Plaintiffs' Disparate Impact Claim Is Barred And Unsupported.**[10]

Plaintiffs allege that the "denial of Ceceil Collins Pearcy a promotion, termination

of [Plaintiffs'] employment and denial of sponsorship of [Plaintiffs'] H-1 Visa" had a

racially "disparate and adverse impact on Plaintiffs."  (Third Amended Complaint at ¶

14).  However, Plaintiffs' EEOC charges do not allege disparate impact discrimination.

(Appx., Ex. A at Ex. 13; Appx., Ex. B at Ex. 20).  A disparate impact claim is barred if it

is not asserted in the plaintiff's EEOC charge.  Pacheco v. Mineta, 448 F.3d 783, 791-92

(5th Cir.), cert. denied, 127 S.Ct. 299 (2006);[11] University of Texas v. Poindexter, ___

S.W.3d ___, 2009 WL 1896071, at *8-9 (Tex. App.—Austin, Jul. 3, 2009, n.p.h.)

(following Pacheco); accord Cochrane v. Houston Light & Power Co., 996 F.Supp. 657,

---

[10] Plaintiffs may only assert their disparate impact claim under the Texas Labor Code.  They cannot maintain a disparate impact claim under 42 U.S.C. § 1981 because section 1981 requires proof of intentional race discrimination.  Mason v. United Airlines, Inc., 274 F.3d 314, 319 (5th Cir. 2001).

[11] Texas courts look to analogous federal law in reviewing discrimination cases brought under the Texas Labor Code.  Quantum Chemical Corp. v. Toennies, 47 S.W.3d 473, 476 (Tex. 2001).  Similarly, the standards for analyzing a race discrimination claim under 42 U.S.C. § 1981 are the same as those applicable to Title VII of the Civil Rights Act of 1964, as amended.  Pegram v. Honeywell, Inc., 361 F.3d 271, 281 n. 7 (5th Cir. 2004). Thus, the same standards apply to Plaintiffs' claims under the Texas Labor Code and 42 U.S.C. § 1981.  See Arrieta v. Yellow Transportation, Inc., No. 3:05-CV-2271-D, 2008 WL 5220569, at *3 (N.D. Tex. Dec. 8, 2008).

662 n.5 (S.D. Tex. 1998).   Accordingly, Plaintiffs' disparate impact claim fails as a matter of law.

Moreover, Plaintiffs have failed to offer any evidence to support a disparate impact claim.  "[I]t is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact."  Smith v. City of Jackson, 125 S.Ct. 1536, 1545 (2005).  "Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities."  Id.  (emphasis in original).  Plaintiffs have not identified any specific and identifiable neutral employment practice that they contend led to an unlawful disparate impact.  See Pacheco, 448 F.3d at 791 ("[a] neutral employment policy is the cornerstone of any EEO disparate impact investigation").  Rather, all of the allegations in paragraph 14 of their Third Amended Complaint are disparate *treatment* allegations.  See Pacheco, 448 F.3d at 792 (noting that all of the incidents mentioned in the plaintiff's EEOC charge were "examples of disparate-treatment discrimination.").  Further, Plaintiffs offer no statistical evidence to support a disparate impact claim.  Consequently, Plaintiffs' disparate impact claim fails.

**D.    Plaintiffs' Racially Hostile Working Environment Claim Is Barred and Unsupported.**

Plaintiffs' assertion that they were subjected to a "racially hostile working environment," (Third Amended Complaint at ¶ 5), is also barred because Plaintiffs did not assert a hostile work environment claim in their EEOC charges.  (Appx., Ex. A at Ex. 13; Appx., Ex. B at Ex. 20).  A court only has jurisdiction over a claim that is based upon

conduct like or reasonably related to the allegations in the charge.  Fine v. GAF Chemical Corp., 995 F.2d 576, 578 (5th Cir. 1993); University of Texas v. Poindexter, ___ S.W.3d ___, 2009 WL 1896071, at *4.

It is well settled that claims for alleged hostile work environment are not "like or reasonably related" to claims alleging instances of disparate treatment, such as discriminatory discharge or failure to promote.  See Stith v. Perot Sys. Corp., 122 Fed. Appx. 115, 118 (5th Cir. Jan. 31, 2005) (rejecting plaintiff's hostile work environment claim because "[n]owhere in the narrative of her EEOC charge is anything other than the alleged discrete acts of discrimination (i.e., the relocation of her position to Dallas) even mentioned."); Kebiro v. Denton State School, 24 F.3d 240, 1994 WL 242587, at *2 (5th Cir. May 27, 1994) (holding that plaintiff's harassment claim was barred because his EEOC charge only alleged discriminatory discharge); Reno v. Metropolitan Transit Auth., 977 F.Supp. 812, 818-19 (S.D. Tex. 1997) (holding that plaintiff could not assert a sexual harassment claim when the EEOC charge alleged only sex, age, and race discrimination); accord Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002) (holding that "claims for … discrimination based [on alleged] failure to promote presented in [an EEOC] charge of discrimination is not broad enough to encompass hostile work environment claims."); Kells v. Sinclair Buick – GMC Truck, Inc., 210 F.3d 827, 836 (8th Cir. 2000) (holding that a harassment claim is outside the scope of an EEOC charge that only alleged discriminatory demotion and discharge); George v. Aventis Pharm., 252 F.Supp.2d 599, 604 (W.D. Tenn. 2003) (holding that a harassment

claim exceeded the scope of an EEOC charge that alleged discriminatory failure to promote).  Accordingly, Plaintiffs' hostile work environment claim is barred.

Further, Plaintiffs present no evidence of a racially hostile work environment. "To establish a prima facie case of 'hostile work environment' based on race, a Plaintiff must show something more than that he was treated badly and that he is black." McCrary v. DPC Industries, Inc., 942 F. Supp. 288, 292 (E.D. Tex. 1996). Rather, the plaintiff must prove that (1) he belongs to a protected class, (2) he was subjected to unwelcome harassment, (3) the harassment was based on race, and (4) the harassment affected a term, condition, or privilege of employment.  Watts v. The Kroger Co., 170 F.3d 505, 509 (5th Cir. 1999); McCrary, 942 F. Supp. at 292.

In their depositions, Plaintiffs admitted that they never heard any race-based discriminatory comments during their employment with MSC.  (Appx., Ex. A at 169-70; Appx., Ex. B at 90-91, 97).  Therefore, Plaintiffs' claim fails because there is no evidence that they were subjected to harassment based on race.  See Ginn v. Texas Wired Music, Inc., 252 F.3d 436 (5th Cir. 2001) ("[o]ther than one stray remark … there is no evidence that the harassment was based on plaintiff's membership in either protected class"); Hill v. Fort Bend Indep. Sch. Dist., 275 F.3d 42 (5th Cir. 2001) ("the crux of Hill's hostile working environment claim is that her supervisors constantly requested her schedules and asked her questions about the ESL program.  We concur with the district court's determination that these types of complaints do not demonstrate that Hill has been subjected to racial or age-based harassment"); Huckaby v. Moore, 142 F.3d 233, 241 (5th Cir. 1998) ("vague or conclusory allegations of discrimination or harassment are not

enough to survive summary judgment."). Likewise, there is no evidence of any severe or pervasive harassment as is required to support a hostile work environment claim. <u>See</u> <u>Ginn</u>, 252 F.3d 436; <u>Hill</u>, 275 F.3d at 42. Therefore, Plaintiffs' hostile work environment claim fails.

**E.  Plaintiffs Cannot Establish A Prima Facie Case Of Race, National Origin, Sex, or Pregnancy Discrimination.**

    1.    <u>Standard of Review for Plaintiffs' Disparate Treatment Allegations</u>.

Both Texas and federal courts have adopted a burden-shifting analysis for determining whether a plaintiff can prove unlawful discrimination. <u>See</u> <u>Quantum Chemical</u>, 47 S.W.3d at 477; <u>Willis v. Coca Cola Enterprises, Inc.</u>, 445 F.3d 413, 420 (5th Cir. 2006). Specifically, the plaintiff must first establish a *prima facie* case of discrimination, by showing that he or she (1) is a member of a protected class, (2) was qualified for the position in question, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees who were not members of plaintiff's protected class under nearly identical circumstances. <u>Baehler v. Fritz Indus., Inc.</u>, 993 S.W.2d 181, 183 (Tex. App.—Texarkana 1999, no pet.); <u>Lee v. Kansas City Southern Railway Co.</u>, __ F.3d __, 2009 WL 1856069, at *4 (5th Cir. Jun. 30, 2009); <u>Willis</u>, 445 F.3d at 420. If the plaintiff establishes a *prima facie* case, the defendant must articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. <u>Id</u>. Thereafter, the plaintiff must show that the defendant's reasons were pretexts for discrimination. <u>Id</u>. As explained below, Plaintiffs cannot meet their burden of proof.

2.   Ms. Collins-Pearcy Cannot Establish A Prima Facie Case Of Discriminatory Pay Because there Is No Evidence That She Was Paid Less Than Any Similarly Situated Employee.

To establish a *prima facie* case of discrimination with respect to her compensation, Ms. Collins-Pearcy must show that a similarly situated employees outside of her protected classes was **paid more** than her.  See Stith, 122 Fed. Appx. at 119; Moody v. United States Sec'y of the Army, 72 Fed. Appx. 235, 238 (5th Cir. 2003); accord Cruse v. G&J USA Pub., 96 F.Supp.2d 320, 326 (S.D.N.Y. 2000) (holding that a *prima facie* case of pay discrimination requires evidence that persons outside plaintiff's protected class were paid more than plaintiff); Merrill v. Cinas Corp., 941 F.Supp. 1040, 1043 (D. Kan. 1996); Barvick v. Cisneros, 941 F.Supp. 1007, 1014 (D. Kan. 1996).  There is no such evidence in this case.  **To the contrary, in her deposition, Ms. Collins-Pearcy could not identify a single white and/or male employee who was allegedly paid more than her, and she admitted that she had no evidence that any employee was in fact paid more than her.  (Appx., Ex. A at 181-82).**

Indeed, Ms. Collins-Pearcy admitted that her allegation was based entirely on inadmissible hearsay (i.e., she alleged that she "heard," from individuals she could not identify or describe, that white males were compensated at higher rates than she was). (Appx., Ex. A at 181-82).  Hearsay and conclusory assertions that are not supported by personal knowledge are not admissible.  See FED. R. EVID. 801-02; Arora v. Starwood Hotels & Resorts Worldwide, Inc., 294 Fed. Appx. 159, 161-62, No. 08-10344, 2008 WL 4410626, at *1 (5th Cir. Sept. 30, 2008) (holding that "unsubstantiated hearsay evidence that would not be admissible at trial does not suffice to raise a genuine issue of material

fact."); Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (holding that "neither the district court nor [the Appellate] Court may properly consider hearsay evidence in affidavits and depositions.").

3.    There Is No Evidence to Support a Prima Facie Case of Discriminatory Failure to Promote.

To make a *prima facie* showing of discriminatory failure to promote, a plaintiff must show that he or she: (1) is a member of a protected class; (2) sought and was qualified for an available position; (3) was not selected for that position; and (4) the employer awarded the position to someone outside the protected class.   Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 680-81 (5th Cir. 2001); see also Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 317 (5th Cir. 2004).   A *prima facie* showing of discrimination requires a showing that the plaintiff is a member of the protected class and that members outside the protected class received more favorable treatment.   O'Neal v. Roadway Express, No. 05-30648, 2006 WL 1308083, at *2-3 (5th Cir. May 11, 2006); Okaye v. Univ. of Tex. Houston Health Science Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001).   Moreover, an employee claiming a discriminatory failure to promote must show that he or she was "'*clearly better qualified*' (as opposed to merely better or as qualified) than the employees who are selected."   EEOC V. La. Office of Community Servs., 47 F.3d 1438, 1144 (5th Cir. 1995).

Plaintiffs cannot meet their burden of proof.   Ms. Collins-Pearcy alleges that in "June, 2007, [she] was passed over for promotion to Supervisor by a less qualified Italian

employee, Francisco Cosenza." (Third Amended Complaint at ¶ 8).[12] However, Ms. Pearcy offers no evidence to support her allegations. Indeed, she cannot. In her deposition, Ms. Collins-Pearcy admitted that she merely "heard" that such a promotion occurred, and she could not identify any employee from whom she allegedly "heard" that allegation. (Appx., Ex. A at 88-89). As explained above, hearsay allegations are not summary judgment evidence. See FED. R. EVID. 801-02; Arora, 294 Fed. Appx. 159, 161-62, 2008 WL 4410626, at *1; Cormier, 969 F.2d at 1561. **In fact, MSC never promoted Mr. Cosenza.** (Appx., Ex. C at ¶ 8.) Thus, there simply is no basis for Ms. Collins-Pearcy's claim.

4.   Plaintiffs Failed To Exhaust Administrative Remedies Concerning Their Claim That MSC Refused To Sponsor Them For H-1 Visas.

Title 8, § 1182 of the U.S. Code provides the admission qualifications for alien workers and the requirements that must be followed by employers seeking to hire alien workers under the H-1B visa program.[13] In addition, § 1182(n) contains a comprehensive regulatory enforcement scheme that entrusts the investigation of complaints that aliens may have to the Secretary of Labor and the Attorney General. See 8 U.S.C.

---

[12] Plaintiffs do not identify any other specific position to which they contend either of them should have been promoted, and they offer no evidence as to the qualifications required for any such position or the identity of any employee allegedly promoted to any such position. Absent such evidence, Plaintiffs cannot establish a *prima facie* case because they can neither show that they were qualified for any such alleged position, nor show that any individual allegedly promoted to any such alleged position was outside their protected classes. See Harvey v. Chevron U.S.A., Inc., 961 F.Supp. 1017, 1026 (S.D. Tex. 1997) ("Harvey has failed to identify any position to which she should have been transferred that was awarded to a less qualified male. Thus, Harvey has failed to establish a prima facie case of sex discrimination on the basis of Chevron's failure to promote or transfer her to another position.").

[13] Under 8 U.S.C. § 1101(a)(15)(H)(i)(b) (from which the program draws its name), aliens may enter the United States under an H-1B visa to perform services in a "specialty occupation." However, an H-1B visa cannot issue unless the employer wishing to hire the alien first files an application that makes certain statements required by § 1182(n). Thus, § 1182(n) specifically governs the requirements employers must follow to provide an alien with an H1-B visa. See 8 U.S.C. § 1182(n)(1).

§ 1182(n)(2)(A)-(n)(5)(A).  Under this specific section of the statute, an aggrieved party must first file a complaint with the Wage and Hour Division of the U.S. Department of Labor, which then makes a determination of the validity of the complaint.  Id.  If the party is dissatisfied with this decision, it can then make an appeal to an administrative law judge.   20 C.F.R. §§ 655.815, 655.820, 655.840.   If this decision is also unsatisfactory to the aggrieved party, it can then petition for review to the Secretary of Labor.  20 C.F.R. §§ 655.840, 655.845.  An aggrieved party may not pursue remedies at the appropriate United States District Court until these steps have been followed.  20 C.F.R. § 655.850.

Indeed, federal courts have recognized that Congress did not intend to provide a private right of action for individuals to enforce violations of § 1182(n) unless the aggrieved party exhausts her remedies as outlined in the statute.  See Venkatraman v. REI Sys., Inc., 417 F.3d 418 (4th Cir.2005); see also Shah v. Wilci Systems, Inc., 126 F.Supp.2d 641 (S.D.N.Y. 2000).  In the instant case, there is no evidence that Plaintiffs followed these steps, and therefore no private right of action exists.  See Zhang v. China Gate, Inc., No. C07-964RSM, 2007 WL 2677136, at *2 (W.D. Wash. Sept. 7, 2007).

5.   Plaintiffs' Allegation That MSC Refused to Sponsor H-1 Visas for Them Does Not State a Claim under the Texas Labor Code or 42 U.S.C. § 1981 Because Failure to Sponsor a Visa Is Not an Ultimate Employment Decision.

The Fifth Circuit and Texas Courts have a "strict interpretation of the adverse employment element" of the *prima facie* case in employment discrimination cases. Pegram, 361 F.3d at 282.  Specifically, for purposes of a discrimination claim, "[a]dverse

employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."  McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007).[14]  Conversely, "ultimate employment decisions" <u>do not</u> include "interlocutory or mediate" employment decisions, even when those decisions can lead to an ultimate employment decision.  See Burger v. Central Apartment Mgmt., Inc., 168 F.3d 875, 879 (5th Cir. 1999) ("Transferring an employee to a *less secure* (but otherwise similar) position is obviously an 'interlocutory or mediate decision which can lead to an ultimate employment decision.'").

MSC's decision not to sponsor Plaintiffs for an H-1 visa was not an ultimate employment decision.  Rather, it was an interlocutory or mediate decision that Plaintiffs contend led to the ultimate decision to terminate their employment.  As explained above, employment decisions of that sort simply are not actionable in discrimination cases.  See McCoy, 492 F.3d at 559-60.

6.   <u>Plaintiff's Allegation That Another Foreign National Was Sponsored for a Visa Does Not Support A Prima Facie Case</u>.

Plaintiffs allege that MSC refused to sponsor visas for them but did sponsor another foreign national (i.e., Mr. Ricardo Rinaldine)  for a visa.  According to Plaintiffs, that allegation shows disparate treatment based on race and national origin.  The only

---

[14] The Fifth Circuit has historically held that adverse employment actions only encompass "ultimate employment decisions" such as hiring, granting leave or discharging.  While in <u>Burlington Northern v. White</u>, 548 U.S. 53 (2006), the Supreme Court abrogated the "ultimate employment decision" standard in *retaliation* cases, in <u>McCoy</u>, the Fifth Circuit explicitly held that **the ultimate employment decision test still applies in *discrimination* cases.** <u>McCoy</u>, 492 F.3d at 559-60 (**"our precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII *discrimination* claims"**).

court that appears to have directly addressed such a claim rejected the argument Plaintiffs

assert in this case.  See Thiuri v.Schultz, 654 F.Supp. 46, 48-49 (D.D.C. 1986):

> The gravamen of plaintiff's legal claim is that the FSI failed to sponsor him
> for permanent residency status due to racial or national origin
> discrimination. However, … **Plaintiff fails to establish a prima facie case
> of impermissible discrimination merely by demonstrating that two
> individuals of different national origins were treated differently. Such
> a rule would require employers to defend against unnecessary and
> frivolous lawsuits.** Indeed, this rule would work a particular hardship on
> the FSI which employs over a hundred foreign nationals as language
> instructors.

Thiuri, 654 F.Supp. at 48-49.   Accordingly, Plaintiffs' allegation is not sufficient to

support a *prima facie* case of race or national origin discrimination.

Moreover, even if a comparison with a different foreign worker could support a

*prima facie* case (which it cannot), Plaintiffs offer no evidence of disparate treatment.

The only individual whom Plaintiffs allege was sponsored for an H-1 visa is Ricardo

Rinaldine.   (Third Amended Complaint at ¶ 8).   However, Plaintiffs offer nothing,

beyond unsupported, conclusory speculation and hearsay, to support their allegation that

MSC ever sponsored Mr. Rinaldine for a visa.  (Appx., Ex. A at 100-105).   Hearsay and

conclusory assertions that are not supported by personal knowledge are not admissible.

See FED. R. EVID. 801-02; Arora, 294 Fed. Appx. 159, 161-62, 2008 WL 4410626, at *1;

Cormier, 969 F.2d at 1561.   Likewise, it is well settled that an employee's "subjective

belief of discrimination, however genuine, [may not] be the basis of judicial relief."

Lawrence v. University of Texas Med. Branch at Galveston, 163 F.3d 309, 313 (5th Cir.

1999).

Further, Plaintiffs neither offer any evidence that Mr. Rinaldine was similarly situated with them nor offer any evidence that he was treated better than them under nearly identical circumstances.  See Lee, __ F.3d __, 2009 WL 1856069, at *4.  As the Fifth Circuit recently reiterated, Plaintiffs' burden of proof in this regard is steep:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.' The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis.

Id. (internal quotations omitted).  Plaintiffs offer no evidence concerning any of the aforementioned elements.  Thus, their claim fails as a matter of law.

> 7.    There Is No Evidence to Support a Prima Facie Case of Discriminatory Discharge.

In order to show a *prima facie* case of discriminatory discharge under the Texas Labor Code and/or 42 U.S.C. § 1981, Plaintiffs must show that they (1) are members of a protected class, (2) were subjected to an adverse employment action, (3) were qualified for the positions they held, and (4) were replaced by individuals who were not members

of Plaintiffs' protected classes.   Baehler, 993 S.W.2d at 183-84; Turner v. Baylor Richardson Medical Center, 476 F.3d 337, 345 (5th Cir. 2007).   Plaintiffs cannot meet their burden of proof for two reasons.  **First, Plaintiffs cannot establish that they were qualified for the positions they held at the time of their employment termination because it is undisputed that their work visas expired on June 4-5, 2007**.  (Appx., Ex. A at 69 and Ex. 13; Appx., Ex. B at 20 and Ex. 6).  See Egbuna v. Time-Life Libraries, Inc., 153 F.3d 184, 187 (4th Cir. 1998) (en banc) (per curiam) (When the applicant is a foreign national, "being 'qualified' for the position is not determined by the applicant's capacity to perform the job – rather, it is determined by whether the applicant was an alien authorized for employment in the United States at the time in question."); accord Chaudhry v. Mobil Oil Corp., 186 F.3d 502, 504 (4th Cir. 1999).   **Second, there is no evidence that MSC replaced either of the Plaintiffs with individuals who were not members of their protected classes.**

Regarding her pregnancy discrimination claim, Ms. Collins-Pearcy alleges that she was terminated in part, because she took leave "due to her pregnancy."  (Third Amended Complaint at ¶ 17).   That allegation is not sufficient to satisfy a *prima facie* case.  A pregnancy discrimination claim requires a showing that MSC treated Ms. Collins-Pearcy differently than non-pregnant employees who are absent from work for medical reasons unrelated to pregnancy.  See Stout v. Baxter Healthcare Corp., No. 00-60542, 2002 U.S. App LEXIS 2573, at *5 (5th Cir. Feb. 19, 2002) ("The Pregnancy Discrimination Act does not protect a pregnant employee from being discharged for being absent from work even if her absence is due to pregnancy or complications of pregnancy, unless the

absences of nonpregnant employees are overlooked."); accord Garcia v. Women's Hosp. of Texas, 143 F.3d 227, 231 (5th Cir. 1998); Urbaro v. Continental Airlines, Inc., 138 F.3d 204, 206 (5th Cir. 1998); In Re Carnegie Center Assoc., 129 F.3d 290, 297 (3rd Cir. 1997) ("it is not unlawful under the PDA to terminate an employee absent by reason of pregnancy if the employer would have terminated an employee absent by reason of a different temporary disability"), cert. denied, 524 U.S. 938 (1998); Byrd v. Lakeshore Hospital, 30 F.3d 1380, 1382 (11th Cir. 1994); Troupe v. May Dept. Stores, 20 F.3d 734, 738 (7th Cir. 1994).[15]  There is no such evidence in this case.

Moreover, the evidence shows that MSC decided not to seek to sponsor Ms. Collins-Pearcy for a renewed visa on February 14, 2007 (i.e., an entire month *before* Ms. Collins-Pearcy began her maternity leave).   (Appx., Ex. F.)[16]   That evidence conclusively negates Plaintiffs' allegation that she was terminated "because" she took maternity leave.  See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) ("employers need not suspend previously planned [employment actions] upon discovering that [a leave request] has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined is no evidence whatever of causality."); Metropolitan Transit Authority, 446 F.3d 574, 584-85 (5th Cir.), cert. denied, 127 S.Ct. 230 (2006) (holding that "just as in Clark County, Metro was not required to suspend [the plaintiff's] termination pending" plaintiff's request for leave.).

---

[15] The TCHR provisions prohibiting pregnancy discrimination are virtually identical to the federal Pregnancy Discrimination Act ("PDA").  See TEX. LAB. CODE § 21.106; 42 U.S.C. § 2000e-2(K).  Accordingly, Texas courts look to federal case law interpreting the federal PDA in reviewing pregnancy discrimination cases brought under the TCHRA.  Baehler, 993 S.W.2d at 183.

[16] Ms. Collins-Pearcy took time off work for maternity leave beginning on March 14, 2007.  (Appx., Ex. A at 41).

8.    <u>Plaintiffs' Retaliation Claims Fail Because Plaintiffs Failed To Exhaust Administrative Remedies and Did Not Engage In Protected Conduct</u>.

Plaintiffs allege that MSC retaliated against them for opposing discriminatory practices.   (Third Amended Complaint at ¶¶ 5, 21).  However, Plaintiffs' respective EEOC charges, which Plaintiffs filed on July 17 and 27, 2007 (i.e., well over a month after Plaintiffs' employment with MSC ended on June 4, 2007), did <u>not</u> allege retaliation. (Appx., Ex. A at Ex. 13; Appx., Ex. B at Ex. 20).   Thus, Plaintiffs failed to exhaust administrative remedies concerning their retaliation claims.  <u>See</u> <u>Perez v. MCI Worldcom Communications</u>, 154 F.Supp.2d 932, 938 (N.D. Tex. 2001) ("retaliation claims arising prior to the filing of an EEOC charge may only be included [in a lawsuit] if mentioned in the original charge."); <u>accord</u> <u>McCrary v. DPC Indus., Inc.</u>, 942 F.Supp. 288, 294-95 (E.D. Tex. 1996); <u>Seppy v. City of Irving</u>, No. Civ.A. 3:00-CV-386-R, 2002 WL 1592609, at * 4 (N.D. Tex. Jul. 18, 2002); <u>University of Texas v. Poindexter</u>, ___ S.W.3d ___, 2009 WL 1896071, at *6 ("Retaliation is a different legal theory from race-based discrimination.").  Accordingly, Plaintiff's retaliation claims fail as a matter of law.

Moreover, neither Plaintiff engaged in any protected conduct.  Mr. Pearcy admits that he never complained about discrimination to anyone at MSC.  (Appx., Ex. B at 106-11).  Ms. Collins-Pearcy alleges that she talked to Mr. Jim Morrison to express an interest in being promoted, and during the course of that conversation mentioned that there were no Black employees in management.  (Appx., Ex. A at 92-93).  However, she did not tell Mr. Morrison that she thought the absence of Blacks in management was due to

discrimination.  (<u>Id</u>).  Thus, Ms. Collins-Pearcy did not engage in a statutorily protected activity.  <u>See</u> <u>Pope v. ESA Servs., Inc.</u>, 406 F.3d 1001, 1010 (8th Cir. 2005):

> Pope, as a preface to expressing his interest in the district manager-in-training position, shared his observation that there were no blacks in the district manager position in his region.  … These comments are insufficient to show that Pope opposed an unlawful employment practice by ESA; Pope did not attribute the absence of black district managers in his region to racial discrimination.  Thus, Pope  was not engaged in statutorily protected activity and did not establish a prima facie case of retaliation.

406 F.3d at 1010.

Rulings issued by courts in this district, including this Court, are entirely consistent with <u>Pope</u>.  <u>See</u> <u>Baker v. Union Pac. R.R. Co.</u>, 145 F.Supp.2d 837, 844 (S.D. Tex. 2001) **(Atlas, Judge)** ("To qualify as protected activity, the complaints must relate clearly to discrimination covered by Title VII."); <u>Dupont-Lauren v. Schneider (USA), Inc.</u>, 994 F.Supp. 802, 823 (S.D. Tex. 1998) ("Vagueness as to the nature of the grievance ... prevents a protest from qualifying as a protected activity. … An employee's statement cannot be deemed to be in opposition to an unlawful employment practice unless it refers to a specific practice of the employer that is allegedly unlawful."); <u>Spinks v. Trugreen Landcare, L.L.C.</u>, 322 F.Supp.2d 784, 797 (S.D. Tex. 2004) (granting summary judgment for employer on employee's TCHRA retaliation claim and holding that "[a] vague charge of discrimination will not invoke protection under the [Texas Labor Code].").  Accordingly, Ms. Collins-Pearcy's allegations do not show that she engaged in any protected conduct.

**F.     MSC Had Legitimate Reasons for Its Employment Decisions Concerning Plaintiffs and There Is No Evidence That the Reasons Are Pretexts for Discrimination.**

In this case, the evidence shows that Plaintiffs' attendance and work performance were substandard.  (Appx., Ex. C; Appx., Ex. D, F, G.)  Further, Plaintiffs' employment with MSC ceased because Plaintiffs were no longer able to provide MSC with the requisite work authorizations for them to be legally employed in the United States. (Appx., Ex. C).

To rebut MSC's reasons, Plaintiffs are required to show:

> either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative).

Rachid v. Jack In the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).

There is no evidence that would satisfy either prong of Rachid.  To the contrary, Plaintiffs offer no evidence to contradict MSC's evidence concerning their poor attendance and poor performance, and it is undisputed that Plaintiffs' work authorizations expired on June 4-5, 2007.  (Appx., Ex. A at 69 and Ex. 13; Appx., Ex. B at 20 and Ex. 6). Moreover, as explained above, Plaintiffs admit that they never heard any racially or national origin based discriminatory comments during his employment with MSC. (Appx., Ex. A at 169-70; Appx., Ex. B at 90-91, 97).  Thus, there simply is no evidence of unlawful discrimination in this case.

**G.** **Plaintiffs' Libel Claim Fails Because The Statements in Question Were Absolutely Privileged and Were Non-defamatory Opinions.**

Ms. Ceceil Collins-Pearcy's libel claim[17] is based entirely on her allegation that MSC, in written communications to the EEOC in response to her charge of discrimination, allegedly stated that she was a "bad worker." (Appx., Ex. A at 188-90). However, any statements MSC made to the EEOC were absolutely privileged. "An absolute privileged communication is one which, by reason of the occasion upon which it was made, no remedy exists in a civil action for libel or slander." Krenek v. Abel, 594 S.W.2d 821, 822 (Tex. Civ. App.—Waco 1980, no writ). In Texas, "all communications, oral or written, made in the due course of a judicial proceeding are absolutely privileged." Wal-Mart Stores Inc. v. Lane, 31 S.W.3d 282, 290 (Tex. App. -- Corpus Christi 2000, pet. denied). "Judicial immunity extends to statements made in quasi-judicial proceedings before governmental executive officers, boards, and commissions which exercise quasi-judicial powers." Id; accord James v. Brown, 637 S.W.2d 914, 916 (Tex. 1982); Krenek, 594 S.W.2d at 823. Statements made to the EEOC during the course of an EEOC investigation of a charge of discrimination are absolutely privileged. Matta v. May, 888 F.Supp. 808, 813 (S.D. Tex. 1995); Strickland v. Aaron Rents, Inc., No. EP-05-CA-013-DB, 2006 WL 770578, at *7-8 (W.D. Tex. Mar. 24, 2006); Diaz v. Gulf Coast Legal Foundation, No. H-88-0512, 1990 WL 282578, at *2 (S.D. Tex. Nov. 8, 1990).

Plaintiff's libel claim also fails because alleged statements that she was a "bad worker" were non-defamatory opinions. To be actionable, a statement must be capable of defamatory

---

[17] In his deposition, Anthony Pearcy admitted that he "cannot say" that MSC made a false defamatory statement about him. (Appx., Ex. B at 105-06). Accordingly, Mr. Pearcy cannot maintain a libel claim against MSC.

meaning.  Musser v. Smith Protective Servs., Inc., 723 S.W.2d 653, 654-55 (Tex. 1987).

Therefore, "[a] plaintiff suing for a defamatory statement must establish [that] the defendant

published a false, defamatory ***statement of fact, rather than an opinion.***"  Robertson v.

Southwestern Bell Yellow Pages, Inc., 190 S.W.3d 899, 903 (Tex.App.—Dallas 2006, no pet.);

accord Brown v. Swett & Crawford of Texas, Inc., 178 S.W.3d 373, 383 (Tex. App.—Houston

[1st Dist.] 2005, no pet.).  "Whether a statement is an opinion or an assertion of fact is a question

of law."  Brown, 178 S.W.3d at 383.  **"[A] statement implying a coworker is incompetent is**

**not a statement of fact, but rather a nonactionable opinion."**  Robertson, 190 S.W.3d at 903.

Accordingly, Plaintiffs' libel claim fails as a matter of law.

## H.  Plaintiffs' Fraud Claim Fails As a Matter of Law.

### 1.  Any Alleged Promises Concerning the Terms or Conditions of Plaintiff's At-Will Employment Were Illusory and Unenforceable as a Matter of Law.

Plaintiffs' fraud claim is based on their allegation that during their job interviews

MSC allegedly promised to sponsor extended work visas for them.  (Appx., Ex. A at 184-

85; Appx., Ex. B at 100-01).[18]  As explained below, Plaintiffs' claim fails because

Plaintiffs could not have justifiably relied upon any such alleged promises.

A fraud claim requires proof that the plaintiff justifiably relied on the alleged

misrepresentation.  See Gilmartin v. KVTV-Channel 13, 985 S.W.2d 553, 558 (Tex. App.

– San Antonio 1998, no pet.) ("Reliance on the promise must be *reasonable and*

*justified*.");  American Tobacco Co. Inc. v. Grinnell, 951 S.W.2d 420, 436 (Tex. 1997)

---

[18] In his deposition, Mr. Pearcy admitted that Ms. Ruiz never said MSC would sponsor *him*.  (Appx., Ex. B at 33-34).  Instead, Mr. Pearcy testified that Ms. Ruiz merely stated generally that MSC does work visa sponsorships.  (Appx., Ex. B at 33-34).  Indeed, as late as February 28, 2007, Mr. Pearcy sent an email to MSC's human resources personnel inquiring whether MSC would sponsor a visa for him.  (Mark Pearcy Email dated 02/28/07, attached to the Appendix as Exhibit K).  Mr. Collins-Pearcy also made a formal request that MSC consider sponsoring her for a renewed visa in February 2007.  (Ruiz Email dated 02/05/07, attached to the Appendix as Exhibit L.)  There would have been no reason for Plaintiffs to make such requests if MSC had previously promised to seek renewal of their visas.

("the allegedly defrauded party must have reasonably relied … to his detriment."). However, Plaintiffs were at-will employees.  (Appx., Ex. A at 18, 65, 67 and at Ex. 1; Appx., Ex. B at 19-20 and at Ex. 5).

"In employment at will situations, either party may impose modifications to the employment terms as a condition of continued employment."  Hathaway v. General Mills, Inc., 711 S.W.2d 227, 229 (Tex. 1986).  "[W]hen the employer notifies an employee of changes in employment terms, the employee must accept the new terms or quit."  Id.[19]  Accordingly, **"[a] promise to provide employment which is subject to termination at any time or for any reason does not provide any assurances about the employer's future conduct, and _does not provide a basis for detrimental reliance as a matter of law_."**  Collins v. Allied Pharmacy Mgt., Inc., 871 S.W.2d 929, 937 (Tex. App.—Houston [14th Dist.] 1994, no pet.); accord Light v. Centel Cellular Co. of Texas, 883 S.W.2d 642, 644-45 (Tex. 1994) (a promise dependent on a period of continued employment of an at-will employee "_would be illusory_ because it fails to bind the promisor who always retains the option of discontinuing employment in lieu of performance.").[20]

---

[19] Indeed, "[i]f the employee continues working with knowledge of the changes, he has accepted the changes as a matter of law."  Id.

[20] See also Crow v. Rockett Special Utility Dist., 17 S.W.3d 320, 329-30 (Tex. App.-Waco 2000, pet. denied) (holding that at-will employee may not prevail on a fraud claim by asserting "that his employer's policies constitute fraudulent representations" because "the at-will employment doctrine would be effectively eviscerated.") disapproved on other grounds by Binur v. Jacobo, 135 S.W.3d 646, 651 n. 11 (Tex. 2004); see also Brown v. Swett & Crawford of Texas, Inc., 178 S.W.3d 373, 379-380 (Tex. App.—Houston [1st Dist.] 2005, n.p.h.) (holding the at-will status of plaintiff precluded fraud claim based on employer's alleged promise to make plaintiff a partner).

In her deposition, Ms. Collins-Pearcy explained that she viewed the alleged promise to sponsor her for a renewed work visa as a promise of continued employment:

> Q.        … My question is: What injury was caused to you because you relied on that representation?
>
> **A.**      Well, emotional distress.  ***It came as a shock to us <u>because we had planned on continued employment with this company</u>*** …

(Appx., Ex. A at 186-87).  However, as explained above, Plaintiffs had no basis to justifiably rely on any alleged promises of continued employment **<u>because they were at-will employees</u>.**  Consequently, Plaintiffs' fraud claims fail as a matter of law.

Additionally and/or alternatively, Plaintiffs ratified any alleged changes to the terms and conditions of their employment by continuing his employment with MSC after receiving notice of any such changes.  As explained above, "[i]f [an] employee continues working with knowledge of the changes, he has accepted the changes as a matter of law."  <u>Hathaway</u>, 711 S.W.2d at 229.

        a.     <u>Plaintiffs Cannot Establish a Fact Issue on Their Fraud Claims.</u>

MSC is also entitled to summary judgment as a matter of law because Plaintiffs cannot produce any evidence establishing a fact issue on the elements of their fraud claims.  Under Texas law, the elements of common law fraud are: 1) a false material representation was made; 2) the speaker knew the representation was false or made it recklessly without any knowledge of its truth; 3) the speaker intended that it be acted on by the party; and 4) the party actually and justifiably relied upon the representation and suffered injury.  <u>Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.</u>, 51 S.W.3d 573, 577

(Tex. 2001).  Further, where, as in this case, a fraud claim involves an alleged promise to do an act in the future, the plaintiff must prove that, at the time of the alleged representation, the speaker had no intention of performing the act.  <u>T.O. Stanley Boot Co., Inc. v. Bank of El Paso</u>, 847 S.W.2d 218, 222 (Tex. 1992).  There is no such evidence in this case.  As a result, Plaintiffs' fraud claim fails as a matter of law.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant Mediterranean Shipping Company (USA) Inc. respectfully requests that the Court grant its Motion for Summary Judgment in its entirety, dismiss Plaintiffs' case against it, award costs and attorneys' fees, and award any other relief to which they may be entitled.

Respectfully Submitted:

/s/ Michael D. Mitchell
Michael D. Mitchell, Fed. ID No. 15330
Flyn L. Flesher, Fed. ID No. 873686
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
500 Dallas, Suite 3000
Houston, Texas 77002
(713) 655-5756
(713) 655-0020 (Fax)

ATTORNEYS FOR DEFENDANT
MEDITERRANEAN SHIPPING COMPANY
(USA), INC.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of this pleading has been forwarded pursuant to the Federal Rules of Civil Procedure to Debra V. Jennings, 3401 Louisiana, Suite 110, Houston, TX 77002, on this the 1st day of October, 2009.

/s/ Michael D. Mitchell
Michael D. Mitchell