# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CECEIL L. COLLINS-PEARCY and | § | |
| MARK A. PEARCY, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-2798 |
| | § | |
| MEDITERRANEAN SHIPPING | § | |
| COMPANY (USA) INC., | § | |
|     Defendant. | § | |

## <u>MEMORANDUM AND ORDER</u>

This employment discrimination case comes before the Court on Defendant Mediterranean Shipping Company (USA), Inc.'s ("MSC's") Motion for Summary Judgment [Doc. # 39] ("Motion").[1]  Plaintiffs Ceceil L. Collins-Pearcy ("Collins-Pearcy") and Mark A. Pearcy ("Pearcy") filed a Response [Doc. # 58],[2] and MSC filed a Reply [Doc. # 71].  The Motion is fully briefed and ripe for determination.

---

[1]    MSC filed an Appendix [Doc. # 40] in support of the Motion.

[2]    Plaintiffs also filed exhibits in support of their Response [Docs. # 60 – # 65]. Plaintiffs' Response and exhibits were filed under seal.  The Court notes that Plaintiffs' Response, which is sixty-three pages in length, is difficult to follow, frequently vague, and rife with citation and other errors.  Further, the Response cites only sporadically to the record.  The Court has nevertheless made every effort to discern and evaluate each of Plaintiffs' arguments and supporting evidence.  It is noted, however, that the Court has no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003); *see also de la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005) ("Judges are not like pigs, hunting for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Both Plaintiffs raise claims of a racially hostile work environment and discrimination based on race, as well as claims of national-origin discrimination, under Chapter 21 of the Texas Labor Code, § 21.001 *et seq*., and 42 U.S.C. § 1981 ("§ 1981"). Collins-Pearcy also raises claims of interference and retaliation under the Family and Medical Leave Act of 1993 ("FMLA" or "the Act"), 29 U.S.C. § 2601 *et seq.*, and discrimination based on gender and pregnancy under the Texas Labor Code and § 1981. Finally, both Plaintiffs assert claims of libel and fraud under Texas law. MSC moves for summary judgment on all claims.

After carefully considering the parties' submissions, all pertinent matters of record, and applicable legal authorities, the Court concludes that MSC's Motion should be **granted** in all respects. The Court concludes that Collins-Pearcy has failed to raise a genuine issue of material fact that she was an eligible employee under the FMLA. Collins-Pearcy's disparate impact claim fails because it was not exhausted, and Pearcy's disparate impact claim fails because he has not raised a genuine issue of material fact that there is a causal link between any specific, facially neutral employment policy and an actionable disparity based on one of his protected classes. Plaintiffs failed to exhaust their race-based hostile environment claims under the Texas Labor Code, and have not raised a fact issue that they were subjected to such an environment under their §1981 claims. MSC is entitled to summary judgment on Plaintiffs' disparate treatment claims, based on all of their respective protected classes, because Plaintiffs have not produced evidence sufficient to establish a *prima facie* case of discrimination for any of those claims. Further, Plaintiffs have not raised a genuine issue of material fact that MSC's stated reasons for taking any adverse

2

employment actions against them were pretextual or based on a mixed motive. Plaintiffs failed to exhaust their retaliation claims under the Texas Labor Code, and have not established a *prima facie* case of retaliation under § 1981. Finally, Plaintiffs have failed to produce evidence sufficient to raise a genuine issue of material fact to support their libel and fraud claims.

## I.    FACTUAL BACKGROUND

Defendant MSC is a worldwide shipping line engaged in international container transport. MSC hired Plaintiffs Ceceil Collins-Pearcy and Mark Pearcy, a married couple, to work in MSC's Houston office on June 5, 2006.[3] Plaintiffs are Black Jamaicans who were authorized to work in the United States for one year at the time of their hire.[4] Plaintiffs were authorized for employment under the Optional Practical Training program, which allows certain international students to work in the United States for approximately one year after they have completed their studies.[5] *See* 8 C.F.R.§ 214.2(f)(10)(ii). Each Plaintiff has a Master's Degree in Business Administration from Nicholls State University. Collins-Pearcy was originally assigned to the Intermodal Department at MSC. She later worked in MSC's

---

[3]    The date Plaintiffs started their employment is unclear from the record. It is assumed to be June 5, 2006, or thereafter.

[4]    *See* Deposition of Ceceil Collins-Pearcy, Exh. 4 to Response [Doc. # 64] ("Collins-Pearcy Deposition"), at 60-62; Deposition of Mark Pearcy, Exh. 3 to Response [Docs. # 63, # 64] ("Pearcy Deposition"), at 28-30.

[5]    *See* Collins-Pearcy Deposition, at 62; Deposition of Darlene Ruiz, Exh. 2 to Response [Doc. # 61] ("Ruiz Deposition"), at 133-34.

Equipment Department and Freight Cashier Department.[6]   Collins-Pearcy's ultimate supervisor throughout her employment at MSC was Jim Morrison, a Caucasian male, MSC's Assistant Vice President.[7]   Pearcy worked in MSC's Export Documentation, Import Customer Service, and Far East Import Departments during his employment at MSC.[8] Pearcy had a different supervisor in each department.[9]  The ultimate decision-makers at MSC when it came to employment decisions for both Plaintiffs were Claudio Bozzo, MSC's President, and Paolo Magnani, MSC's Vice President, both male, Caucasian, Italians.[10]

Citing poor attendance and work performance, MSC states that on February 14, 2007, it decided not to sponsor Plaintiffs' work-visa applications, which, *if* successful, would have provided Plaintiffs the legal status necessary to continue their employment at MSC.[11]

---

[6]     Collins-Pearcy Deposition, at 66-67.

[7]     *Id.* at 74-75; Ruiz Deposition, at 104-05.

[8]     Pearcy Deposition, at 39-45.

[9]     *Id.*

[10]    Ruiz Deposition, at 116-117; Deposition of Concettina T. Scaglione, Exh. 1 to Response [Doc. # 60] ("Scaglione Deposition"), at 205.

[11]    Declaration of Darlene Ruiz, Exh. C to Motion [Doc. # 40-3] ("Ruiz Declaration I"), ¶ 5; Email from Paolo Magnani to Darlene Ruiz of February 14, 2007, Exh. F to Motion [Doc. # 40-6].  Specifically, Plaintiffs sought H-1B visas, a method for non-immigrant, foreign workers to obtain legal employment status in this country in connection with employment in a technical field requiring advanced study.  *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b); 8 C.F.R. § 214.2(h)(1)(ii)(B); *Programmers Guild, Inc. v. Chertoff*, 338 F. App'x 239, 241 (5th Cir. 2009). To obtain H-1B legal status, a prospective employer must file a petition on behalf of the worker applicant.  *See* 8 U.S.C. § 1182(n); 8 C.F.R § 214.2(h)(1)(ii)(B); *Programmers Guild*, 338 F. App'x (continued...)

On March 14, 2007, Collins-Pearcy began a maternity leave that ran to May 21, 2007.[12]  Plaintiffs' employment with MSC was terminated on or about June 4, 2007. Plaintiffs subsequently filed the instant employment discrimination suit against MSC.

## II.  <u>SUMMARY JUDGMENT STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The

---

[11]      (...continued)
         at 241.

[12]      Collins-Pearcy Deposition, at 41-42.

moving party, however, need not negate the elements of the non-movant's case.  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Likewise, "conclusory allegations" or "unsubstantiated

assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 229 (5th Cir.  2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413)).  The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413).  Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III.   ANALYSIS

### A.   Collins-Pearcy's FMLA claims

MSC argues that Plaintiff Collins-Pearcy's claim under the Family Medical Leave Act fails because she was never an eligible employee under the Act. To meet the definition of an "eligible employee" under the FMLA, an employee must have been employed "for at least 12 months by the employer with respect to whom leave is requested." 29 U.S.C. § 2611(2)(A). "The determination of whether an employee has worked for the employer for . . . at least 12 months must be made as of the date the FMLA leave is to start." 29 C.F.R. § 825.110(d). MSC hired Collins-Pearcy on June 5, 2006. She began her maternity leave on March 14, 2007, less than twelve months after she was hired.[13] Thus, MSC argues, Collins-Pearcy is not an eligible employee under the FMLA, and her FMLA claims fail.

Collins-Pearcy does not dispute that she does not meet the eligible-employee criteria, but argues that she can still establish a viable FMLA claim under a "detrimental reliance"

---

[13]     *Collins-Pearcy Deposition*, at 35. Collins-Pearcy returned to work from maternity leave on May 21, 2007. *Id.* at 84.

principle in the context of an equitable-estoppel theory.[14]   Collins-Pearcy cites to *Minard v. ITC Deltacom Commc'ns, Inc.*, 447 F.3d 352, 358-60 (5th Cir. 2006), for support.   In *Minard*, the Fifth Circuit reversed the district court's grant of summary judgment on a FMLA claim.[15]   The Fifth Circuit set fourth the elements of equitable estoppel in the FMLA context:

> an employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an "eligible employee" and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment.

*Id.* at 359.

Noting that the employer granted the employee's request for leave in a memorandum that "specifically stated that she was an eligible employee under the Family and Medical Leave Act and that she had 'a right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period,'" the court concluded that the employer unintentionally made a definite misrepresentation to the employee that she was an "eligible employee" at the time she requested leave, and that the employee reasonably relied upon that misrepresentation.[16]  *Id.* at 354.   The court held that there was an issue of fact regarding whether the employee relied on

---

[14]   Response, at 21.

[15]   The district court held first that it did not have subject matter jurisdiction over the plaintiff employee's claim because the employer did not meet the Act's numerosity requirement.   *Minard*, 447 F.3d at 355.   The Fifth Circuit disagreed and held that the numerosity requirement was an element of the claim for relief, not a jurisdictional requirement.   *Id.* at 357.

[16]   The memorandum also added that the requested leave would be counted against her annual FMLA entitlement.   *Id.*

this misrepresentation to her detriment, pointing to conflicting allegations about whether the plaintiff would have had surgery, and thus missed work, regardless of receiving protected leave. *Id.* Accordingly, the court reversed the grant of summary judgment and remanded the case. *Id.*

Plaintiffs invoke *Minard* in their Response, arguing that Tina Scaglione, MSC's Director of Human Resources, allegedly told Collins-Pearcy that she was an eligible employee entitled to leave under the FMLA.[17] Collins-Pearcy, however, cites to no evidence that Scaglione, or any other MSC employee, told her that she was eligible for FMLA leave. Collins-Pearcy does not cite her own deposition or affidavit testimony on this point. Further, Collins-Pearcy does not establish that she, in fact, requested such leave.

Collins-Pearcy instead refers to several documents that reference the "FMLA" in an attempt to circumstantially show entitlement to equitable estoppel. First, Collins-Pearcy cites MSC's response to Collins-Pearcy's Texas Workforce Commission Charge of Discrimination ("MSC's TWC Response"), in which MSC, through Scaglione, stated that Collins-Pearcy returned from "FMLA Leave" on May 21, 2007.[18] Collins-Pearcy also cites several emails between MSC staffers discussing her leave, several of which refer to "FMLA" forms, in

---

[17]     Response, at 21.

[18]     MSC Response to Ceceil L. Collins-Pearcy's Texas Workforce Commission Civil Rights Division Charge, Exh. 4 to Response [Doc. # 65-2] ("Response to TWC Charge"), at 12 of 62.

addition to short-term-disability paperwork.[19]   Finally, Collins-Pearcy produces a Certification of Health Care Provider Form, completed by her doctor, bearing a legend "(Family and Medical Leave Act of 1993)" and ordering bed rest for the "duration of her pregnancy, [and] six weeks after delivery"; "3/15/07 — 5/24/07."[20]

The Court holds that Collins-Pearcy's evidence is insufficient to establish her reliance on any statement by MSC to her, and thus fails to raise a genuine issue of material fact that MSC should be equitably estopped from asserting her status as an ineligible employee under the FMLA.  As noted above, Collins-Pearcy points to no evidence that anyone at MSC actually *told her* that she was eligible for FMLA leave.  *See Harvey v. Wal-Mart Louisiana, L.L.C.*, ___ F.Supp.2d ___, 2009 WL 3171099 (W.D. La. Sept. 30, 2009) ("'[T]he defendant-employer must have actually represented to the plaintiff-employee that her leave was covered and/or that she was protected by the FMLA in order to equitably estop the defendant from arguing in court that the FMLA does not specifically cover the plaintiff-employee and/or her leave.'") (quoting *Ford-Evans v. United Space Alliance LLC*, 329 F. App'x 519, 527 (5th Cir. 2009)).  Indeed, the uncontradicted record reflects that MSC has no record that Collins-Pearcy ever applied for FMLA leave.[21]  While Scaglione testified

---

[19]   *See* Emails Regarding Collins-Pearcy's Leave, Exh. 4 to Response [Doc. # 65-2], at 14-20 of 26.

[20]   Certification of Health Care Provider Form, Exh. 5 to Response [Doc. # 65-2], at 24-26 of 26.

[21]   Declaration of Darlene Ruiz, Exh. F. To Response in Opposition to Motion to Amend [Doc. # 22-6], ¶ 3.

that she signed MSC's Response to Collins-Pearcy's TWC Charge, she also testified that she did not prepare it, and the statement that Collins-Pearcy was on FMLA leave, rather than maternity leave, was error.[22] Moreover, MSC's TWC Response was submitted on September 2007, months after the leave concluded. Accordingly, Collins-Pearcy could not have relied upon it at the time she took her leave. None of the cited emails, which were communications among only MSC human-relations and management employees, and not with Collins-Pearcy, actually authorizes FMLA leave or makes an erroneous representation to Collins-Pearcy's about her eligibility for such leave. Finally, the Certification of Health Care Provider Form was filled out by Collins-Pearcy's doctor, not by any MSC representative. Collins-Pearcy does not establish that MSC provided her or her doctor with this form, and therefore the form constitutes no evidence of what MSC was thinking at the time. At best Collins-Pearcy proffers a scintilla of circumstantial evidence that is insufficient to support a jury verdict that MSC made a "definite representation" to her that she was eligible for FMLA leave. *See DIRECT TV Inc. v. Robson*, 420 F.3d at 536; *Minard*, 447 F.3d at 359.

Even if Collins-Pearcy had established that MSC made a definite representation that she was entitled to FMLA leave, she has failed to show that she relied upon such a representation to her detriment. The uncontroverted evidence shows that Collins-Pearcy's doctor required that she be confined to bed rest from mid-March to late May, 2007.[23]

---

[22]    Scaglione Deposition, at 23-34.

[23]    *See* Certification of Health Care Provider Form, Exh. 5 to Response [Doc. # 65-2], at 24-26 of 26.

Collins-Pearcy has not shown that she relied to her detriment on any representation by MSC about her leave status, because she has not shown, or even argued, that she could have cut her leave short and returned to work in any event. *See Minard*, 447 F.3d at 359; *Durose v. Grand Casino of Mississippi Inc.*, 251 F. App'x 886, 889 (5th Cir. 2007) (emphasizing the importance of the detrimental reliance requirement). Consequently, MSC is entitled to summary judgment on Collins-Pearcy's FMLA claim.[24]

The forgoing also sounds the death knell for Collins-Pearcy's FMLA retaliation claim. To establish a *prima facie* case of retaliation under FMLA, the plaintiff must establish that she was protected by the Act. *Hunt v. Rapides Health Care System, L.L.C.*, 277 F.3d 757, 768 (5th Cir. 2001). As noted, Collins-Pearcy has not made this showing.

---

[24]     Collins-Pearcy also argues that she is an eligible employee under the Sixth Circuit's holding in *Ricco v. Potter*, 377 F.3d 599, 600 (6th Cir. 2004). In *Ricco*, an employee was discharged by her employer. *Id.* at 601. Two years later, an arbitrator ordered that this discharge be converted to a 30-day suspension, and that she be "made whole." *Id.* The employee returned to work with full credit for years of service and seniority. *Id.* Several months later, the employee requested FMLA leave for health reasons, which the employer denied on the basis that she had not met FMLA's 1,250 hours of service requirement. *Id.* The Sixth Circuit reversed the district court dismissal of the case on this ground, holding that under the arbitrator's make-whole order, the employee was entitled to credit for the hours that she would have worked towards FMLA's hours of service requirement. *Id.* at 605-06. None of these circumstances is present in the case at bar. Collins-Pearcy's reliance on *Ricco* is unavailing.

### B.    Plaintiffs' Texas Labor Code and § 1981 Discrimination Claims

Plaintiffs bring various claims of employment discrimination under both Chapter 21 of the Texas Labor Code and under 42 U.S.C. § 1981.  "In enacting [Chapter 21], the [Texas] Legislature intended to correlate state law with federal law in employment discrimination cases." *M.D. Anderson Hosp. and Tumor Institute v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000) (citing TEX. LAB. CODE § 21.001).  "Adhering to legislative intent, Texas courts have looked to federal law in interpreting [Chapter 21's] provisions." *Id.*; *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999) ("The law governing claims under [Chapter 21] and Title VII is identical.").  Similarly, the summary judgment test for assessing discrimination claims under § 1981 is the same as it is under Title VII.  *See David v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (citing *Pratt v. City of Houston*, 247 F.3d 601, 605 n.1 (5th Cir.2001)).  Accordingly, the Court looks to precedent interpreting Title VII when evaluating Plaintiffs' claims under Chapter 21 of the Texas Labor Code and § 1981.

### 1.    Disparate Impact

MSC moves for summary judgment on Plaintiffs' disparate impact claims.  It appears Plaintiffs intend to assert these claims under both § 1981 and the Texas Labor Code.  A disparate impact claim is not legally viable under § 1981.  Section 1981 requires proof of intentional discrimination.  *See National Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 714-15 (5th Cir. 1994) ("To prove a cause of action under section 1983 based on a violation of equal protection, Plaintiffs are required, as under section 1981, to

demonstrate intentional discrimination; mere disparate impact will not suffice."); *Gray v. Entergy Operation, Inc.,* 240 F.3d 1074, 2000 WL 1835299, at *4 (5th Cir. Nov. 29, 2000) (unpublished) (stating that if a plaintiff employee was attempting to raise a disparate impact claim by relying on statistics showing a concentration of African-American employees in unskilled positions, she did not state a claim cognizable under § 1981, because § 1981 requires proof of intentional discrimination) (citing *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982)); *see also Scheidecker v. Arvig Enters., Inc.*, 122 F.Supp.2d 1031, 1043-44 (D. Minn. 2000) (an intentionally discriminatory policy does not give rise to a disparate impact claim; a plaintiff "cannot recast a disparate treatment claim to establish a disparate impact claim") (citing *Hunt v. Tektronix, Inc.*, 952 F.Supp. 998, 1009 (W.D.N.Y.1997)).  Accordingly, the Court analyzes the disparate impact claims under the Texas Labor Code only.

Disparate impact claims involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 860 (5th Cir. 2002) (citations omitted); *City of Austin Police Dept. v. Brown*, 96 S.W.3d 588, 594 (Tex.App.—Austin 2002, pet. dism'd).  To establish a *prima facie* case of disparate impact, a plaintiff must both (1) identify the employment practice that has the allegedly disproportionate impact and (2) establish causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination.  *Id.*  Ordinarily, a *prima facie*, disparate impact case requires a showing of a substantial "statistical disparity

between protected and non-protected workers in regards to employment or promotion." *Id.* (citing *Munoz v. Orr*, 200 F.3d 291, 299-300 (5th Cir. 2000)).

### a. Exhaustion

MSC first argues that Plaintiffs' disparate impact claims under the Texas Labor Code are barred for failure to exhaust.[25] "To bring a suit for unlawful employment practices, a plaintiff must first have filed an administrative complaint with the EEOC or the [Texas Workforce Commission] not later than the 180th day after the date the alleged unlawful employment practice occurred." *University of Texas v. Poindexter,* ___ S.W.3d ___, 2009 WL 1896071, at *4 (Tex.App.—Austin, Jul. 3, 2009, n.p.h.) (citing TEX. LAB. CODE § 21.202(a)). "Timely filing of an administrative complaint is a mandatory and jurisdictional prerequisite to filing suit." *Id.* (citing *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996)). An employment discrimination plaintiff is not required to "check a certain box or recite a specific incantation to exhaust his or her administrative remedies before the proper agency." *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006). "Instead, the plaintiff's administrative charge will be read somewhat broadly, in a fact-specific inquiry into what EEOC investigations it can reasonably be expected to trigger." *Id.*; *see also Estate of Martineau v. Arco Chemical Co.*, 203 F.3d 904, 913 (5th Cir. 2000) (Title VII claims are limited to those claims that "could reasonably be expected to grow out of the initial charges of discrimination."); *Poindexter*, 2009 WL 1896071, at *8-*9 (holding that employee's

---

[25]    *See, e.g.*, Motion, at 11-12.

disparate impact claim under the Texas Labor Code was barred because she did not raise it in her EEOC charge) (citing *Pacheco*, 448 F.3d at 790-92).

In *Pacheco*, the Fifth Circuit upheld the district court's dismissal of the employee's disparate impact claim on the grounds that he failed to exhaust the claim in his administrative charge.[26]   448 F.3d at 792.   The *Pacheco* court held that an investigation of a disparate impact claim could not have reasonably been expected to flow out of the administrative charge because: "(1) [the charge] facially alleged disparate treatment; (2) it identified no neutral employment policy; and (3) it complained of past incidents of disparate treatment only."[27]   *Id.* at 792.

In the case at bar, Plaintiffs filed several documents with the EEOC and Texas Workforce Commission raising various claims of discrimination.   The Court evaluates Plaintiffs' respective filings in turn.

---

[26]   Before assessing the administrative complaint in that case, the court of appeals reviewed other cases that had addressed the issue.   *Gomes v. Avco Corp.*, 964 F.2d 1330 (2d Cir. 1992); *Grace v. Bank of America*, 2003 WL 23095993 (N.D. Tex. Dec. 23, 2003); *Woodman v. WWOR-TV*, 293 F.Supp.2d 381, 390 (S.D.N.Y. 2003).   A distinguishing factor in these cases noted by the *Pacheco* court was whether the plaintiff had identified a facially neutral employment policy.   *See Pacheco*, 448 F.3d at 790-92; *compare Woodman,* 293 F.Supp.2d at 390, *with Gomes*, 964 F.2d at 1334-35.

[27]   The *Pacheco* court noted that the only non-time barred factual allegation in the administrative charge was that: "The [February 28, 2000] incident was non-selection for a supervisor's job opening at this facility.   Once again, the 'good old boy' was selected even though I was more qualified having been in the agency since 1978[, t]his being my seventh facility (my third level 4 facility)."   *Id.* at 791.   The third factor was based on the court's analysis of the time-barred factual allegations in the administrative charge, which alleged disparate treatment only, and which the court stated were relevant for context.   *Id.*

**Collins-Pearcy's Administrative Filings.**— Collins-Pearcy relies on three documents she claims she filed with administrative agencies. First, she produces her original charge of discrimination, which was received by the EEOC on July 19, 2007. There, Collins-Pearcy alleged:

I.    On May 21, 2007, upon my return from maternity FMLA leave, I was reassigned to the Freight Cashier Department. I had previously worked as Equipment/Logistics Coordinator. Respondent is a shipping company.

II.   On June 4, 2007, my employment was terminated. Respondent's Vice President at its Houston Office, Darlene Ruiz, told me that my work authorization was expiring and that the company would not be sponsoring me for an H-1 Visa. When I asked why, she said that she did not know. However, Respondent has sponsored Italian employees such as Ricardo Rinaldine [sic], Equipment/Logistics Coordinator, white male, for H-1 visas. In June, 2007, I was passed over for promotion to Supervisor by a less qualified Italian employee, Francisco Cosenza, white male. I was also paid less than Italian employees for doing the same job.

III.  I believe that I have been discriminated against because of my race, black, national origin, Jamaican, and sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.[28]

None of the allegations in Collins-Pearcy's original charge of discrimination could be interpreted as identifying a specific, facially neutral employment policy as required to exhaust a claim of disparate impact discrimination. *See Pacheco*, 448 F.3d at 792; *see and compare McClain v. Lufkin Industries, Inc.*, 519 F.3d 264, 275 (5th Cir. 2008). Rather,

---

[28]   Ceceil L. Collins-Pearcy's Charge of Discrimination, Exh. 13 to Response [Doc. # 65-4] ("Collins-Pearcy's Charge"), at 31 of 41.

Collins-Pearcy alleges acts of intentional discrimination based on her various protected classes.

Next, Collins-Pearcy points to a letter entitled "Addendum to Charge." This document is dated November 26, 2007, but is unsigned.[29] This document does not bear any "received" stamp of the EEOC.[30] Collins-Pearcy admitted at her deposition that she was not "100 percent sure" that she sent it to the EEOC.[31] As Collins-Pearcy has not presented persuasive evidence that this Addendum was sent to or received by the EEOC, she may not rely on it for administrative claim-exhaustion purposes.

Collins-Pearcy next points to her "Amendment to Charge," which bears a "received" stamp of the EEOC.[32] As noted, to properly exhaust a claim under the Texas Labor Code, a plaintiff must file a charge of discrimination within 180 days of the alleged unlawful act. *Poindexter*, 2009 WL 1896071, at *4. Collins-Pearcy's Amendment is dated January 15, 2008, more than 180 days after she ceased working at MSC, and thus any new claims it raises are untimely for exhaustion purposes, as explained below.

The "relation back" doctrine under Texas law provides that, an "amendment to a complaint alleging additional facts that constitute unlawful employment practices relating

---

[29]    Ceceil Collins-Pearcy's Addendum to Charge, Exh. 13 to Response [Doc. # 65-4] ("Collins-Pearcy's Addendum"), at 32-35 of 41.

[30]    *Id.*

[31]    Collins-Pearcy Deposition, at 116.

[32]    Ceceil Collins-Pearcy's Amendment to Charge, Exh. 13 to Response [Doc. # 65-4] ("Amendment to Charge") (stamped "Received . . . Houston District Office EEOC").

19

to or arising from the subject matter of the original complaint relates back to the date the complaint was first received by the commission."[33]  *Id.* at *6 (citing TEX. LAB. CODE § 21.201(f)).  However, Texas appellate authority clarifies that, "[g]enerally, amendments that raise a new legal theory do not 'relate back' to an original charge of discrimination." *Id.* (quoting *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003) (internal quotes omitted; collecting cases)).  The *Poindexter* court held that an employee's amendment raising a retaliation claim did not relate back to her original charge of discrimination which only raised allegations of disparate treatment based on race.  *Id.*; *see Manning*, 332 F.3d at 878 (the purpose of the relation-back requirement is to ensure that employers are afforded timely notice of challenged practices).  Similarly, in the case at bar, Collins-Pearcy's original charge of discrimination alleged only intentional disparate treatment discrimination, not disparate impact discrimination based upon a facially neutral employment policy, a materially different claim.  *See Pacheco*, 448 F.3d at 787 (disparate impact and disparate treatment are "two largely separate theories of discrimination") (citing *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977)).  Accordingly, Collins-Pearcy's allegation in her Amendment that MSC did not post the availability of openings does not relate back to her original charge, and the new theory was asserted too late.  Because Collins-Pearcy failed to make any timely filed allegations of disparate impact discrimination in her administrative filings, the Court

---

[33]    Because Collins-Pearcy asserts only a Texas Labor Code disparate impact claim, not a Title VII theory, Texas law is applicable.

lacks subject matter jurisdiction over Collins-Pearcy's Texas Labor Code disparate impact claim.  *See Poindexter*, 2009 WL 1896071, at *4.[34]

   **Pearcy's Administrative Filings.—** Mark Pearcy filed his charge of discrimination on July  30, 2007.  His charge reads in its entirety:

I.      On March 15, 2007, Respondent's Vice President Darlene Ruiz told me that I was no longer being considered for work visa sponsorship. Respondent is a shipping company.  I worked as a Traffic Customer Service.

II.     However, Ruiz and Anrea Borattini, Office Manager, had told me previously on March 6, 2007 that Respondent would sponsor my work visa.  Respondent sponsored far more Italian employees for work visas, and promoted them far more than other employees.  Available positions were not advertised.  On or around June 4, 2007, I was terminated.

III.    I believe that I have been discriminated against because of my race, black, and national origin, Jamaican, in violation of Title VII of the Civil Rights Act of 1964, as amended.[35]

   Notably, Pearcy specifically alleged in his original charge, in the context of an allegation about Italian employees being promoted more than other employees, that MSC did not advertise available positions.  Pearcy also filed a "Summary of Charges," received by the EEOC on November 30, 2007, in which he repeats the "no-posting" allegation.  He added

---

[34]   Texas law differs from Title VII on this point; in Texas, the administrative exhaustion requirement is jurisdictional, while in the Fifth Circuit, the issue of whether exhaustion is a jurisdictional requirement or merely a prerequisite to suit is open. *See McClain*, 519 F.3d at 275 n.1; *Pacheco*, 448 F.3d at 788 n.7.

[35]   Mark Pearcy's Charge of Discrimination, Exh. 13 to Response [Doc. # 65-4] at 37 of 41.

that there was a lack of written job performance criteria at MSC, and that employees are instead subjectively evaluated or "gauged."[36]

Read in its entirety, the gravamen of Pearcy's administrative complaint as amended is that MSC intentionally preferred for promotion employees of Italian descent, who MSC intentionally gives preferential treatment over minority employees as part of a "culture" of "nepotism." This claim primarily sounds in disparate treatment based on Pearcy's race and national origin, as a Black, non-Italian. Nevertheless, under the principles enunciated in *Pacheco* that an administrative complaint should be construed "somewhat broadly" to reach issues within the scope of the investigation which can reasonably be expected to grow out of the charge of discrimination, the Court concludes Pearcy has exhausted disparate impact claims based on MSC's alleged policies of not posting job openings and subjectively gauging

---

[36]      In his Summary of Charges, Pearcy alleged that:

> The culture of the company is of such that available positions are not posted internally and consequently knowledge of available positions is only known after a group email is sent announcing the promotions. Too often employees of Italian descent are the ones promoted. The culture creates an atmosphere of subservience, sending a message that one has to "do their time" and hope along the way that they are "liked." "Liked" often appears to be due to whom you know and who knows you and how high you are willing to "jump" when asked to do so. There is no document outlining your job description or what the performance criteria are for your job. When, Darelene Ruiz, the Vice President of Human Resources, was asked the basis for evaluating performance, she said that employee's performance is "gauged."
>
> The problem with being "gauged" is that it is a subjective measure. . .

Mark Pearcy's Summary of Charges, Exh. 13 to Response [Doc. # 65-4], at 38 of 41.

employee performance to decide who to promote.  *See Pacheco*, 448 F.3d at 792; *see also McClain,* 519 F.3d at 275 (allegation of a discriminatory, but neutral, company policy of subjective promotion decisions was sufficient to exhaust a disparate impact claim).[37]

### b.     Pearcy:  Merits Analysis of Disparate Impact Theory

Pearcy fails to meet his summary judgment burden to establish a *prima facie* case of disparate impact discrimination.  As noted, to establish a *prima facie* case of disparate impact, a plaintiff must both (1) identify the facially neutral employment practice that has the allegedly disproportionate impact and (2) establish causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination.  *Stout*, 282 F.3d at 860.   Ordinarily, a *prima facie* disparate impact case requires a showing of a substantial "statistical disparity between protected and non-protected workers in regards to employment or promotion."  *Id.* (citing *Munoz v. Orr*, 200 F.3d 291, 299-300 (5th Cir. 2000)).

Plaintiffs argue in their Summary Judgment Response that the specific neutral policies that form the basis of the disparate impact claim are "MSC's hiring, salary, promotions and terms and conditions of employment policies and practices at MSC."[38]  This argument is nothing more than a general attack on management at MSC.  "It is a matter of settled law that a disparate impact . . . action is not the proper mechanism from which to attack the

---

[37]     As noted, Pearcy cannot state a claim for disparate impact discrimination under § 1981, which requires intentional discrimination.  *See, e.g.*, *City Pub. Serv. Bd.*, 40 F.3d at 714-15.

[38]     Response, at 32.

23

cumulative effects of an employer's practices." *Munoz*, 200 F.3d at 304 (citing, *e.g., Pouncy v. Prudential Ins. Co. of Am.*, 668 F.2d 795, 800 (5th Cir. 1982) ("Although some courts have used the disparate impact model of proof to challenge multiple employment practices simultaneously, this is an incorrect use of the model." (internal citation omitted)).

The only evidence to which Plaintiffs point in an effort to identify a neutral employment policy is Scaglione's deposition testimony that MSC generally did not post notice or publicize supervisory job openings as they became available.[39] The Court assumes for summary judgment purposes that the absence of any posting of job openings, in certain circumstances, could satisfy the requirement of a neutral policy for a disparate impact claim. This theory, however, is unavailing in this case. Pearcy points to no evidence that he was affected or injured in any way by such a policy. He has no evidence that he applied for a specific promotion, or that he would have done so had he known of its availability. Indeed, Plaintiffs do not even argue that Pearcy sought a promotion at any point during the course of his one-year employment with MSC. Without some connection between the identified policy and Pearcy, Pearcy has no standing to assert his disparate impact claim. *See Bacon v. Honda of Am. Mfg.*, 370 F.3d 565, 576-77 (6th Cir. 2004) ("an individual plaintiff arguing

---

[39]     Response, at 30 (citing Scaglione Deposition, at 202-03). The Court thus analyzes the disparate impact theory only on this basis. Plaintiffs do not argue in their brief, nor cite to any evidence, that subjectivity in evaluating employee performance generally, or subjectivity in promotion decisions, *i.e.*, "gauging," supports their disparate impact claims. Nor does Plaintiffs' operative complaint raise such subjective evaluations as a basis for relief. Plaintiffs thus have abandoned their theory of relief based on MSC's alleged subjectivity in performance evaluations or "gauging" allegations.

a disparate impact theory must show that the challenged policy directly disadvantaged him in some fashion") (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (under basic principles of standing, a plaintiff must have suffered some real or threatened injury); *Robinson v. Polaroid Corp.*, 732 F.2d 1010, 1016-17 (1st Cir. 1984); *Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 451 (10th Cir. 1981); *Carpenter v. Bd. of Regents of Univ. of Wis. Sys.*, 728 F.2d 911, 915 (7th Cir. 1984)); *see also McClain*, 519 F.3d 264, 275 n.2 (5th Cir. 2008) (expressing doubt that two plaintiffs would have had standing to assert, on behalf of a class, a disparate impact claim based on an employer's policy of assigning new employees to a certain undesirable division when the two plaintiffs were not so assigned); *Gomes*, 964 F.2d at 1335.

Pearcy's "no-posting" disparate impact claim fails for a second reason. Pearcy has not shown evidence of causation, the other prong of a *prima facie* case on a disparate impact claim. A disparate impact plaintiff must not only isolate specific practices as responsible for disparities, but also must "conduct a systemic analysis of those employment practices in order to establish their case." *Munoz*, 200 F.3d at 299-300 (citing *Black Fire Fighters Ass'n of Dallas*, 905 F.2d 63, 63 (5th Cir. 1990)). Here, Plaintiffs merely cite generally to MSC's EEO reports for the years 2006 through 2008, which show a low percentage of Blacks in management positions at MSC.[40] Plaintiffs have not produced any statistical evidence tying

---

[40]     The EEO report for 2006 shows that of nineteen "Officials and Managers," only one was Black (a male). *See* EEO Reports, Exh. 7 to Response [Doc. # 65-3], at 35 of 50. Nine females were employed in this group, but no Black females. *Id.* Out of a total of 169 employees, nineteen were Black, of which fourteen were women. *Id.* MSC (continued...)

this disparity to MSC's failure to post supervisory job openings in particular, let alone to any other specific policy.  Plaintiffs present no evidence addressing possible non-discriminatory reasons that could explain a low percentage of Blacks in supervisory positions.  *See Munoz*, 200 F.3d at 301 (excluding an expert's opinion on statistical disparities in a disparate impact case because, *inter alia*, the expert admitted that he failed "to consider other variables such as education and experience as explanations for any observed discrepancy between promotion rates and to not performing a regression analysis"); *U.S. v. Valencia*, ___ F.3d ___, 2010 WL 809813, at *26 (5th Cir. 2010) ("Evidence of mere correlation, even a strong correlation, is often spurious and misleading when masqueraded as causal evidence, because it does not adequately account for other contributory variables.").  "It is completely unrealistic to assume that unlawful discrimination is the sole cause of people failing to gravitate to jobs and employers in accord with the laws of chance."  *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 992 (1988).  Pearcy simply has not presented evidence to create a genuine fact issue that the "no posting" policy at MSC, *per se*, caused a disparate impact on a protected class of which Pearcy was a member.  For the forgoing reasons, MSC is entitled to summary judgment on Plaintiffs' disparate impact claims.[41]

---

[40]    (...continued)
employed 89 total females in 2006.  *Id.*  The 2007 and 2008 reports are substantially similar.  *See id.* at 26-27 of 50.

[41]    The Court notes that had Collins-Pearcy successfully exhausted a disparate impact claim, her claim would fail on the merits because, like Pearcy, she has failed to establish a causal connection between any specific neutral policy and a disparate impact on any of her protected classes.  Plaintiffs do not differentiate between
(continued...)

## 2.    Hostile Work Environment

MSC next moves for summary judgment on Plaintiffs' claims of a racially hostile

work environment under the Texas Labor Code and § 1981.  To prevail on their hostile work

environment claim, Plaintiffs must prove that (1) they belonged to a protected group; (2) they

were subjected to unwelcome harassment; (3) such harassment was based on race; and (4)

the harassment complained of affected a term, condition, or privilege of employment.  *See*

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *Baker v. FedEx Ground Package*

*Sys. Inc.*, 278 F. App'x 322, 328 (5th Cir. May 13, 2008).  "We determine whether a hostile

work environment exists using a totality-of-the-circumstances test that focuses on the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating . . . and whether it unreasonably interferes with an employee's work

performance." *Baker,*  278 F. App'x at 328 (quoting *Turner v. Baylor Richardson Med. Ctr.*,

476 F.3d 337, 347 (5th Cir. 2007)) (ellipsis in *Baker*).  A plaintiff "must subjectively

perceive the harassment as sufficiently severe or pervasive, and this subjective perception

must be objectively reasonable." *Id.* at 328-29 (quoting *Frank v. Xerox Corp.*, 347 F.3d 130,

138 (5th Cir. 2003)).  "When the workplace is permeated with discriminatory intimidation,

ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the

---

[41]     (...continued)
         themselves in their briefing or presentation of evidence on this point.  The Court has
         no obligation to raise and analyze a party's position in the absence of that party's
         meaningfully briefing the point.  *Cf. United States v. Griffith,* 522 F.3d 607, 610 (5th
         Cir. 2008) ("It is a well-worn principle that the failure to raise an issue on appeal
         constitutes waiver of that argument").

victim's employment and create an abusive working environment, Title VII is violated."

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations

omitted); *Ramsey*, 286 F.3d at 268.

### a.    Exhaustion

MSC first argues that Plaintiffs failed to exhaust their hostile work environment

claims under the Texas Labor Code in their administrative complaints.  The Court agrees.

As set forth *supra*, in an exhaustion inquiry, the plaintiff's administrative charge is read in

a "fact-specific inquiry into what EEOC investigations it can reasonably be expected to

trigger."  *Pacheco*, 448 F.3d at 792; *see also Poindexter*, 2009 WL 1896071, at *4 ("When

filing suit, a plaintiff may raise only the specific issue made in the employee's administrative

complaint and any kind of discrimination like or related to the charge's allegations." (internal

quotations omitted)).  As discussed, the essence of both Collins-Pearcy's and Pearcy's

administrative charges is that MSC engaged in unlawful discrimination by, *inter alia*,

denying Plaintiffs opportunities for advancement, refusing to sponsor their work visas, and

ultimately terminating their employment.  Noticeably absent from their administrative

charges, however, is any meaningful express assertion of a hostile work environment or

allegations of severe or pervasive harassment that would rise to the level of affecting a term

condition, or privilege of employment.  *See Ramsey*, 286 F.3d at 268.  Plaintiffs' allegations

of discrete acts of discrimination were unlikely, in of themselves, to trigger an administrative

investigation of the day-to-day working conditions of Black employees at MSC.  *Cf. Estate*

*of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000) (employee did not

establish a continuing violation for a hostile work environment claim based on his termination because his termination related to disparate treatment, not harassing conduct); *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 325 (Tex.App.—Texarkana 2008) (employee did not preserve a hostile work environment claim when his only timely allegation of discrimination was based on his termination, because "[t]ermination is not itself harassing conduct."); *see also Hill v. Dep't of Veterans Affairs*, 2009 WL 348767, at *4 (5th Cir. 2009) (finding that a plaintiff who alleged in his administrative charge "three specific discriminatory events—the non-renewal of [his] clinical privileges, the decision to place [him] on administrative leave, and his 'constructive discharge,'" had not exhausted a hostile work environment claim).

Collins-Pearcy's charge contained nothing of a hostile work environment ilk. Similarly, Pearcy did not allege severe or pervasive harassment in his administrative filings. Pearcy did allege, in his Summary of Charges, that at MSC there is "an atmosphere of subservience, sending a message that one has to 'do their time' and hope along the way they are 'liked.'"[42]  Read in context, Pearcy here was referring to MSC's no-posting policy for supervisory job openings and MSC's alleged preference for people of Italian descent.[43]  This allegation is insufficient to meet the exhaustion requirement for actionable harassment.  *See Poindexter*, 2009 WL 1896071, at *4.  Both Plaintiffs accordingly have failed to exhaust

---

[42]    Pearcy's Summary of Charges, at 38 of 41.

[43]    *Id.*

their hostile work environment claims under the Texas Labor Code, and MSC is therefore entitled to summary judgment on those claims.

### b.       Hostile Work Environment: Merits Analysis

MSC is also entitled to summary judgment on Plaintiffs' hostile work environment claims asserted under § 1981, which claims do not require administrative exhaustion. *See Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000).  Although it is undisputed that Plaintiffs are members of a protected class, they have failed to raise a genuine issue of material fact that they were subjected to severe and pervasive unwelcome harassment, based on race, that affected a term, condition, or privilege of employment.  *See Ramsey*, 286 F.3d at 268.  Specifically, in this lawsuit, the conduct of which Plaintiffs complain is:

(1)     MSC decided not to sponsor Plaintiffs work visas after representing that Plaintiffs would be sponsored;

(2)     Pearcy was disciplined twice for the same infraction, which he claims was leaving work to take his wife to the doctor;

(3)     Pearcy was transferred between departments at MSC three times in one year;

(4)     Collins-Pearcy was transferred to a less desirable position after she returned from maternity leave;

(5)     the Pearcys did not receive promotions while other less qualified employees of Italian descent did;

(6)     Collins-Pearcy was relegated to a clerical position after complaining about the lack of promotions for Black employees;

(7)      MSC did not publicize available job openings until the positions were filled with "Italian and European" candidates;

(8)     qualified Black candidates were not promoted at MSC; and

(9)     MSC's ultimate decision-makers were Italian males.[44]

As an initial matter, the majority of Plaintiffs' accusations, even if taken as true, are not of a character or kind of conduct encompassed by actionable harassment.  *See Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) ("Actionable harassment must involve facially discriminatory, intimidation, ridicule, and insults.") (citing *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)); *see also Harris*, 510 U.S. at 17, 21.  Plaintiffs focus primarily on discrete acts and employment decisions that give rise to disparate treatment claims.  *See Estate of Martineau* , 203 F.3d at 913; *Bartosh,* 259 S.W.3d at 325; *Buchanan v. Exxon Mobil Corp.*, 2006 WL 492605, at *4 (S.D. Tex.  Mar. 1, 2006) (holding that a demotion and alleged disparities in pay are "more appropriately characterized as ultimate employment decisions and discrete acts, and as such are more suited for a traditional discrimination or disparate treatment claim" than a hostile work environment claim) (citing *Felton,* 315 F.3d at 485).  Further, each Plaintiff testified that he and she could not recall anyone at MSC making a racist comment towards them during their employment.[45]  The Court nevertheless, for the sake of completeness, addresses Plaintiffs' arguments *seriatim.*

---

[44]     Response, at 34-37.

[45]     *See* Pearcy Deposition, at 90-91, 97; Collins-Pearcy Deposition, at 169-70.

First, Plaintiffs cite Pearcy's testimony that MSC originally informed Plaintiffs that their work-visa applications would be sponsored, but ultimately MSC did not do so.[46] Pearcy also added that this decision was made despite the fact that he received a positive performance review from his supervisor.[47] However, the decision not to sponsor Plaintiffs' work visas was—at most—a single instance of an alleged discrete act of discrimination, and not severe or pervasive *harassment*. Further, Plaintiffs have provided no evidence, as opposed to speculation or personal belief that the decision not to sponsor their visas was based on their race.[48]

Plaintiffs attempt to rely on MSC's support of the visa application of an Italian employee, Riccardo Rinaldini, but as discussed in detail below, Plaintiffs have provided no evidence that Rinaldini was similarly situated to Plaintiffs in any respect.[49] Plaintiffs also argue that it was harassment that all three Black employees with master's degrees and work experience, specifically, themselves and Max Essockomba, were not sponsored by MSC for work visas.[50] In fact, Plaintiffs present no admissible (non-speculative, non-hearsay)

---

[46]  *See* Pearcy Deposition, at 92, 108-110.

[47]  *Id.* at 141.

[48]  Indeed, the Court concludes below, after detailed analysis of Plaintiffs' cited evidence, that Plaintiffs' evidence of MSC's decision to not sponsor work visas for Plaintiffs was not sufficient to show a fact issue on intentional discrimination. *See infra* pp. 52-58.

[49]  *See* H1-B Visa Application Materials for Riccardo Rinaldini, Exh. 6 to Response [Doc. # 65-3]; *infra* pp. 54-57.

[50]  Response, at 8.

evidence that Essockomba had a masters degree, that he sought an extension of his visa, or that he was otherwise similarly situated to Plaintiffs.  Plaintiffs' only other evidence in this regard is Pearcy's conclusory, unsupported assertion that "Italians were supported" for visas.[51]  This evidence does not establish a fact issue.

In further effort to raise a fact issue that there was a hostile work environment towards Blacks, Plaintiffs also assert that MSC showed favoritism to Italian employees by allegedly making false statements in connection with the Italians' work visa applications.  Plaintiffs' lone evidence for this inflammatory allegation is that on MSC's application for Rinaldini's visa, he is listed as having obtained a master's degree.[52]  However, MSC has produced uncontradicted evidence that Rinaldini in fact received a degree from an Italian university in "Economia Delle Amministrazioni Pubbliche E Delle Instituzioni Internazionali," and Plaintiffs present no evidence to the contrary.[53]  Plaintiffs also baldly accuse MSC of paying "under the table" money to unspecified Italian employees who lacked the proper work authorizations.[54]  Plaintiffs provide no specifics; this conclusory statement is inadmissible

---

[51]    *See* Pearcy Deposition, at 86.

[52]    *See* Petition for H1-B Non-immigrant Worker, Exh. 6 to Response [Doc. # 65-3], at 9-13 of 50.

[53]    *See* Degree Certificate, Exh. F to Reply [Doc. # 71-6];  *See* Bocconi University, Graduate School - Prospective Students, http://www.unibocconi.it/wps/wcm/connect/SitoPubblico_EN/Navigation+Tree/Home/Schools+and+Programs/Graduate+School/Prospective+Students/?lang=en (last visited Mar. 8, 2010) (listing the degree as "Master of Science in Economics and Management of Innovation and Technology").

[54]    Response, at 39.

as hearsay and/or speculation lacking any indicia of reliability.   Plaintiffs thus have failed to raise a genuine issue of material fact that their visa sponsorships were denied based on race and that this alleged conduct contributed to a racially hostile work environment.

Plaintiffs also assert as harassment based on his race that Pearcy allegedly was disciplined twice for the same incident.  Plaintiffs argue that MSC utilizes a progressive discipline policy in which the first step is to verbally warn an employee, and the second step is to issue an initial written notice.[55]  They contend, on the basis of Pearcy's own perceptions of MSC's policies and conduct, that MSC violated this policy by verbally warning him and also issuing him an initial warning notice when he left work one day to take Ceceil to the doctor.[56]  Pearcy testified that, before leaving, he informed his team leader, who was serving in a supervisory capacity, and explains that he could not inform his supervisor because the supervisor was absent from work that day.[57]  Plaintiffs, however, have not produced any evidence that MSC maintains a formal or any other progressive discipline policy as Plaintiffs contend.  Plaintiffs also do not substantiate that it was appropriate under MSC policies for Pearcy to inform only his team leader before leaving work.

Plaintiffs compare Pearcy's situation to that of an Italian employee, Rinaldini, whom Plaintiffs contend was allowed to suddenly leave work to tend to a family emergency in Italy

---

[55]     Response, at 11.

[56]     *See* Pearcy Deposition, at 77-80, 94-95; Initial Warning Notice, Exh. 4 to Response [Doc. # 65].

[57]     *Id.* at 94.

and allegedly did not inform management.  Plaintiffs speculate without proof that Rinadlini

faced no discipline.[58]  In fact, the uncontroverted documentary record and testimony of Ruiz,

a person with knowledge of the situation, reveal that Rinaldini was put on leave, never

returned from Italy, and was terminated from employment effective November 1, 2007.[59]

There is no evidence that Rinaldini escaped discipline, or that he left work without informing

management in the first place, as Pearcy speculates.  Moreover, as discussed in detail below,

Plaintiffs cite no competent evidence that Rinaldini was similarly situated to Pearcy.[60]

Plaintiffs arguments here thus are mere speculation and not admissible evidence.[61]

Plaintiffs next point to Pearcy being transferred into three different departments in the

span of one year as evidence of harassment based on his race.  Pearcy testified that MSC was

transferring him without explanation and that "it's difficult getting promotions within the

company if you can't remain with a department for a long period of time."[62]  He stated that

he complained to his manager about being transferred, but was told that it was Ruiz's

decision, but when he complained to Ruiz, she referred him back to his managers, like he was

---

[58]    Rinaldini Emails, Exh 6 to Response [Doc. # 65-3].

[59]    Email from Darlene Ruiz to Payroll Assistant Manger, Exh. C to Reply [Doc. # 71-3]
        (stating that November 1 is Rinaldini's last day).

[60]    *See infra* pp. 54-57.

[61]    Pearcy also complains that Ruiz would not talk to Italians the way she did to him on
        the phone at the doctor's office when she reprimanded him for leaving work.  *Id.* at
        94-95.  This complaint, apparently concerning an isolated conversation, does not rise
        to the level of severity or pervasiveness required by the Fifth Circuit for hostile work
        environment claims.

[62]    Pearcy Deposition, at 106-07.

"going in a little circle."[63]  Pearcy did admit, however, that MSC eventually provided him

an explanation, specifically that the transfers were part of a training process.[64]  If this conduct

by MSC could conceivably constitute evidence of a hostile work environment, the events

nonetheless are not probative.   Indeed, Ruiz testified without contradiction that MSC

frequently cross-trained employees.[65]  Scaglione testified that "[w]e transfer employees all

the time."[66]  Pearcy's speculative testimony is insufficient to support his harassment claim.

Plaintiffs next complain that, upon her return from "FMLA" leave, Collins-Pearcy was

transferred to an allegedly less desirable Freight Cashier position where she lost access to a

telephone, and where Plaintiffs contend there were no opportunities for career

advancement.[67]   In the same vein, Plaintiffs argue that Collins-Pearcy was relegated to

clerical positions after complaining about a lack of promotions for Blacks.[68]  As an initial

matter, Collins-Pearcy has produced no evidence that there were any open positions in her

old department at the time or after she returned from maternity leave.  Moreover, MSC has

produced Ruiz's uncontroverted testimony that all departments at MSC offer equal chances

---

[63]     *Id.* at 84.

[64]     *Id.*

[65]     *See* Ruiz Deposition*,* at 52, 78, 90 (commenting on MSC's cross-training practices).

[66]     *See* Scaglione Deposition, at 36.

[67]     Response, at 36.

[68]     This assertion is potentially pertinent to Collins-Pearcy's retaliation claims concerning failure to promote and termination.   Promotions and termination are ultimate employment decisions, and will be addressed below.  *See Buchanan*, 2006 WL 492605, at *4.

for career advancement, and that the Freight Cashier position is more essential to MSC's success than Collins-Pearcy's pre-transfer department, Equipment Logistics.[69]  There also is no evidence that a telephone was necessary for the data entry/freight cashier position. Collins-Pearcy has not shown this transfer, a loss of a phone to do her work, or her assignment to what she considered to be "clerical" positions, was evidence of harassment or due to her race.[70]

Plaintiffs' contentions in support of their hostile work environment claims regarding a lack of promotions for Plaintiffs and other Black employees, and the "no-posting" policy, are discussed in detail elsewhere in this Memorandum.  Moreover, neither those nor the final ground on which Plaintiffs rely, the fact that MSC's ultimate decision-makers were Italian males, are accusations of actionable harassment involving "facially discriminatory, intimidation, ridicule, and insults."  *See Felton*, 315 F.3d at 485.

In sum, Plaintiffs have failed to raise a genuine issue of material fact that they were subject to actionable workplace harassment based on their race.  They have not demonstrated any conduct was repeated, severe or pervasive as required for hostile work environment

---

[69]    Ruiz Deposition, [Doc. # 33-5], at 33-35.

[70]    Collins-Pearcy also asserts that "approximately fifty percent of the employees in the Freight Cashier department were [B]lack.  However, the freight cashier manager and assistant managers were both Italians."  Response at 38.  Plaintiffs also contend that several Black/African-American employees in that department had many years of experience—more than the Italian managers—but that "the [B]lacks have never been promoted to a supervisory position, except one was promoted after Ceceil Collins-Pearcy filed a EEOC charge of discrimination."  *Id.*  These observations are unsupported by any admissible evidence.

claims.  *See Felton*, 315 F.3d at 485.  Nor is there any proof that the allegedly offending conduct by MSC affected a term, condition, or privilege of employment or created an abusive work environment.  *See Harris*, 510 U.S. at 21; *Ramsey*, 286 F.3d at 268.  Accordingly, Defendant is entitled to summary judgment on Plaintiffs' hostile work environment claims.

### 3.   Disparate Treatment

Both Plaintiffs bring claims of disparate treatment discrimination based on race and national origin under both the Texas Labor Code and § 1981.  Collins-Pearcy also alleges under the same statutes that she was discriminated against based on her gender and pregnancy.  MSC moves for summary judgment on all of Plaintiffs' disparate treatment claims.

Unlawful discrimination under both the Texas Labor Code and § 1981 may be established through either direct or circumstantial evidence.  *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003); *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 434 (Tex.App.—Houston [14 dist.] 2002, pet. denied).  Because Plaintiffs have not provided sufficient direct evidence of disparate treatment, their claims are analyzed using the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Russo*, 93 S.W.3d at 434 ("Texas courts invoke *McDonnell Douglas* in employment discrimination cases brought under state law.").  Under this test, a plaintiff must initially establish a *prima facie* case of race discrimination, which raises a presumption of discrimination.  *McDonnell Douglas*, 411 U.S. at 802; *see also Rutherford v. Harris Co.*, 197 F.3d 173, 179–80 (5th Cir. 1999).  If successful, the burden

then shifts to the defendant-employer to articulate a legitimate, nondiscriminatory reason for its actions. *Okoye*, 245 F.3d at 512. The burden on the defendant at this stage "'is one of production, not persuasion . . . [and] can involve no credibility assessment.'" *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000)). If the defendant sustains its burden, "the presumption of discrimination dissipates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). The burden then "shifts back to the plaintiff to establish: (1) that the employer's proffered reason is not true[,] but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). "The plaintiff bears the ultimate burden of persuading the trier of fact . . . that the employer intentionally discriminated against [him] because of [his] protected status. *Wallace*, 271 F.3d at 220 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511–12 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Plaintiffs contend that MSC engaged in unlawful discrimination by paying Collins-Pearcy less than similarly situated employees outside her protected classes, denying promotions to both Plaintiffs, electing not to sponsor both Plaintiffs' work visa applications, and terminating both Plaintiffs' employment. The Court addresses each alleged discriminatory employment action in turn. MSC here argues that Plaintiffs cannot establish

a *prima facie* case of disparate treatment on any of their theories of intentional discrimination.

### a.      Collins-Pearcy's Disparate Pay Claim

To establish a *prima facie* case of discrimination with respect to compensation, Collins-Pearcy must show that she was paid less than an employee outside one of her protected classes for work requiring "substantially the same responsibility." *Johnson v. TCB Const. Co., Inc.*, 334 F. App'x 666, 670 (5th Cir. 2009) (citing *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. Unit A 1981)). She must show that "the workers to whom [she] compares [herself] were performing 'substantially the same job.'" *Id.* (citing *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984)). Collins-Pearcy has produced no evidence of any other employee's salary at MSC, other than her deposition testimony that she heard in "discussions with [her] colleagues" that "the white males have been — were compensated at higher rates."[71] Collins-Pearcy's testimony that she heard about disparate pay for white males in discussions with her colleagues is inadmissible hearsay. *See Martin v. John W. Stone Oil Distrib., Inc,* 819 F.2d 547, 549 (5th Cir. 1987) (a district court may not properly consider hearsay in affidavits or depositions). Moreover, her comments are  conclusory allegations and unsubstantiated assertions that do not meet the non-movant's summary judgment burden to create a genuine issue of material fact. *See, e.g.*, *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Because Collins-Pearcy has not presented admissible evidence raising a genuine fact

---

[71]      Collins-Pearcy Deposition, at 181-82.

question that she was paid less than employees outside her protected class, she fails to meet her summary judgment burden on the *prima facie* case of disparate pay discrimination, and MSC is entitled to summary judgment on this claim.

To the extent that Pearcy also raises a claim for disparate pay discrimination, it fails for the same reasons. Plaintiffs have not cited to evidence of the salary of any MSC employee, much less a similarly situated employee outside any of Pearcy's protected classes.

### b.   Plaintiffs' Failure to Promote Claims

***Prima Facie* Case.**— To establish a *prima facie* case of discriminatory failure to promote, a plaintiff must show that "(1) he belongs to a protected class; (2) he applied for and was qualified for a position for which applicants were being sought; (3) he was rejected; and (4) a person outside of his protected class was hired for the position." *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007) (citing *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680-81 (5th Cir. 2001)).[72]  As an initial matter, Plaintiffs do not offer evidence that they applied for any specific position. Instead, they rely on evidence that MSC did not post available management positions,[73] and argue that Plaintiffs were passed over for promotions that were given to less qualified employees who

---

[72]   An alternate formulation of the fourth element of the Fifth Circuit's *prima facie* test for failure to promote claims is that "the employer continued to seek or promoted applicants with the plaintiff's qualifications." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004) (citing *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 354-55 (5th Cir. 2001) (which in turn cites *Haynes v. Pennzoil Co.,* 207 F.3d 296, 300 (5th Cir. 2000))).

[73]   Scaglione Deposition, at 202-203.

are not members of their protected classes.  Plaintiffs, however, point to no admissible evidence that in fact there were any management level openings during their employment at MSC.[74]  Plaintiffs' sheer speculation that openings existed is insufficient.  Nor do Plaintiffs cite to any probative evidence that any employee (within or outside Plaintiffs' protected classes) was promoted during this time.[75]  Plaintiffs have thus failed to establish a *prima facie* case of a failure to promote claim, and MSC is entitled to summary judgment on each Plaintiff's such claim.

---

[74]   Plaintiffs' citation to the EEOC Reports showing a low percentage of Blacks in management is unavailing.  To prevail, a plaintiff must establish he was entitled to a specific job.  Plaintiffs have not done so.

[75]   Plaintiffs argue in their briefing (without supporting citations to the record) that Collins-Pearcy was passed over for less qualified Italian employees, Francisco Cosenza and Rinaldini, but cite no evidence in support of this assertion.  *See* Response, at 9-10, 36-37 (Cosenza), 43, 46 (Rinaldini).  At other points in their briefing, Plaintiffs assert that various other employees, Marco Rivetti, Varenka Farren, Jennifer Nover, and Denise Vega, received promotions.  *See id.* at 17, 36, 43.  Plaintiffs fail, again, to cite reliable, non-hearsay evidence that any of these employees actually were promoted during Plaintiffs' employment at MSC.  The fact that Rivetti was a Manager at MSC in 2007 does not establish he received a promotion to that position at a time relevant to this case.  *See* Ruiz Deposition, at 121.  Plaintiffs' reliance on Farren as a Manager at MSC is similarly unavailing; Ruiz could not recall when Farren was hired ("[p]erhaps it was 2005, 2006") and promoted ("approximately a year and half later, perhaps . . .[i]n 2006?")  *See id.* at 124.  Moreover, Plaintiffs cite no evidence that Farren was not a member of Plaintiffs' protected classes, and no evidence at all supporting their assertions regarding Nover or Vega. At best, Plaintiffs identify merely a scintilla of evidence that a single employee *may have* been promoted during the period of Plaintiffs' employment at MSC; this proof is insufficient to create a genuine issue of material fact that there were available management positions Plaintiffs wanted and were better qualified for than those selected.  *See Burell*, 482 F.3d at 412.

**Defendant's Articulated Legitimate Reason for Not Promoting Plaintiffs.**—

Assuming *arguendo* that Plaintiffs could establish a *prima facie* case of discrimination based on MSC's failure to promote them, MSC would still be entitled to summary judgment on Plaintiffs' failure-to-promote theory because Plaintiffs have failed to show that MSC's stated reason for this action was pretextual or based on a mixed motive.  MSC's stated reason for not promoting Plaintiffs, and for all of its employment decisions regarding Plaintiffs, is that Plaintiffs' "attendance and work performance were substandard."[76]  MSC has produced evidence that Collins-Pearcy missed 27.5 days of work in the first eight months on the job prior to commencing her maternity leave.[77]  MSC has also produced evidence that in September 2006, Collins-Pearcy "mistakenly released a container that she should not have released, resulting in MSC incurring penalties and fines totaling approximately $395,000."[78]  MSC also points to an email, dated February 9, 2007, authored by Collins-Pearcy's supervisor, Morrison, in which he expressed dissatisfaction with her job performance.[79]  Ruiz

---

[76]    Motion, at 27; *See, e.g.*, Ruiz Declaration I, ¶ 5; Email from Darlene Ruiz to Paolo Magnani of February 14, 2007, Exh. F to Motion [Doc. # 40-6].

[77]    Email from Darlene Ruiz to Paolo Magnani of February 14, 2007, Exh. F to Motion [Doc. # 40-6]; *see also* Ruiz Declaration I, ¶ 4.

[78]    Ruiz Declaration I, ¶ 4; MSC was subsequently able to mitigate the fines and penalties to approximately $6,200, which the company paid.  *Id.*

[79]    Morrison stated in this email:

> Ceceil handled the rail moves for the Gulf Intermodal group and is currently in the Logistics group of equipment control.  Her work in both departments has been average at best.  To date she has not excelled in either department.  Honestly, we expected a lot from Ceceil given her
>
> (continued...)

stated that MSC had "similar concerns" with Pearcy's "performance and attendance."[80] MSC

accordingly has stated legitimate, non-discriminatory reasons for not promoting Plaintiffs.

The burden thus shifts back to Plaintiffs to "offer sufficient evidence to create a

genuine issue of material fact either "(1) that the defendant's reason is not true, but is instead

---

[79]      (...continued)
              educational background, but so far we have not realized these hopes.
              She understands what she learns but to date, she is still very slow for
              someone with similar time of service.  We have spoken to her about
              lateness and the need for her to be here on time.

              Ceceil is a very smart individual who has the ability to go as far as she
              wants in this business.  She has expressed a desire to be part of
              management but so far she has not shown any indication that she is
              willing to make the commitment needed to attain this position.  At this
              juncture, I would not expect her to be able to be promoted for some
              time.

              I think she could be a productive clerk for us, but I do not think that is
              what she is looking for.

        Email from Jim Morrison to Darlene Ruiz, Exh. D to Motion [Doc. # 40-4].

[80]      Ruiz Declaration I, ¶ 4.  Ruiz's email to Magnani on December 6, 2006, stated:

              Unfortunately [Pearcy's] job performance and attitude is bad.  He is in
              Herve's department and for Herve to be frustrated with this guy is
              amazing.  One example today, Ceceil was sick and she left.  Mark left
              too but he failed to tell anybody.  Everytime [sic] Ceceil is sick and
              leaves or calls in sick so does Mark.  Also he shows no interest in
              learning anything.  Ceceil's performance was not rated well by her
              manager Jim Morrison either.  We may have to cite attendance
              problems with Ceceil as she has only one day left before the end of the
              year and at this rate will probably have to be docked.  Herve will place
              Mark on notice for his poor judgment in not informing management of
              his absence.

        Email from Darlene Ruiz to Paolo Magnani of December 6, 2006, Exh. G to Motion
        [Doc. # 40-7].

a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic  (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (internal quotation marks omitted).

**Mixed Motive.—** The Court addresses Plaintiffs' arguments in the order presented in their Response.  Plaintiffs first argue a mixed motive theory.[81]   Under this theory, a Plaintiff need only prove that an illegitimate, discriminatory motive was a motivating factor in the disputed employment decision.  *Id.* at 310; *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005).  "Once the plaintiff meets this burden, the employer may seek to avoid liability by proving that it would have made the same employment decision in the absence of the illegitimate discriminatory motive.  The employer's burden on this score is effectively that of proving an affirmative defense." *Machinchick*, 398 F.3d at 356 (internal citations omitted).

To meet their mixed motive burden that membership in one or more of their protected classes was a motivating factor in MSC's decision to not promote them, Plaintiffs rely on two charts purporting to compare the employment status of ten Black employees at MSC with that of six non-Black employees.[82]   However, these charts contain mostly unsupported assertions.  For example, Plaintiffs argue in their brief that their first chart shows a list of

---

[81]     *See* Response, at 48-50.

[82]     *See* Response at 15, 17.  Plaintiffs actually list seven employees on the second chart, but do not make any assertions about one of the person's, Cosenza's, employment status.  *Id* at 17.

Black employees with "seniority" who have never been promoted.[83] But Plaintiffs have only cited evidence showing that two of these ten listed employees (Plaintiffs themselves) are Black. Similarly, Plaintiffs have produced evidence that shows that only three of the listed employees (Plaintiffs and one other employee) have never been promoted.[84] Plaintiffs' charts are unreliable, are grounded on hearsay, and are inadmissible speculation. They do not provide support for Plaintiffs' broad assertions.

Even if the Court were to find there is evidence that a small number of Black employees were not were not promoted, while certain non-Black employees were, this information does not tend to show that MSC intentionally discriminated against Plaintiffs because Plaintiffs were Black. Plaintiffs point to no evidence about the qualifications of the listed Black employees or their qualifications for specific supervisory positions. Moreover, Plaintiffs provide no evidence that these Black employees sought promotions, or would have if they had been aware of openings. Finally, Plaintiffs have not cited any evidence that the employees they seek to compare in these charts were similarly situated to each other or to Plaintiffs. Plaintiffs have failed to raise a genuine issue of material fact that unlawful discrimination was a motivating factor in MSC's decision to not grant Plaintiffs promotions and, thus, cannot defeat MSC's Motion on mixed-motive theory regarding Plaintiff's lack of promotions.

---

[83]     *Id.* at 15.

[84]     *See* Ruiz Deposition, at 122-25. Plaintiffs' charts also contain at least one error. Employee Rosie Taylor is shown on the first chart as having been "demoted." However, MSC has produced uncontradicted evidence that Taylor was never demoted. *See* Ruiz Declaration II, ¶ 3.

**Pretext.—** Plaintiffs also have not shown that MSC's stated non-discriminatory reason for not promoting Plaintiffs was merely pretext for unlawful discrimination. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000) (citing *Reeves*, 530 U.S. at 147). "The ultimate determination, in every case, is whether, viewing all of the evidence in a light most favorable to the plaintiff, a reasonable fact finder could infer discrimination." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) (citing *Reeves*, 530 U.S. at 142). "In making this determination, a court should consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case. . . .'" *Id.* (citing *Reeves*, 530 U.S. at 148-49). Courts are not to substitute their judgment for that of the employer in evaluating employment decisions. *See, e.g.*, *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 959 (5th Cir. 1993) (ADEA claim). Title VII is "not [a] vehicle[] to question or evaluate personnel moves, which although legal, may have been the result of poor business judgment." *Deaver v. Texas Commerce Bank N.A.*, 886 F. Supp. 578, 585 (E.D. Tex. 1995), *aff'd*, 79 F.3d 1143 (5th Cir. 1996) (citing *Bodenheimer*, 5 F.3d at 959).

Plaintiffs assert that MSC's stated reason not promoting them is false.  Plaintiffs first argue that their attendance and tardiness was not an issue.  They contend that Collins-Pearcy was never "verbally warned, written up, suspended, or otherwise disciplined based on her attendance or tardiness," and that each of both Plaintiffs' absences were approved by management.[85]  Plaintiffs cite to no competent evidence to support this assertion.[86]

Plaintiffs also argue that Pearcy was disciplined for taking his "pregnant wife to the doctor for a few hours, after he notified MSC's team leader of his planned departure."[87] Though, as noted above, Plaintiffs have produced Pearcy's testimony that he informed his team leader before leaving that day, they have produced no evidence that this action was sufficient notice under MSC's rules and policies.  Moreover, Plaintiffs do not rebut MSC's assertion that Pearcy was always absent whenever Collins-Pearcy called in sick or left work.[88]

Plaintiffs also argue that MSC's contention that their job performance was substandard is false because their performance was adequate.  They first cite an email from

---

[85]     Response, at 52.

[86]     Plaintiffs cite Scaglione's testimony that she could not recall if the Pearcys had any issues with tardiness.  Scaglione Deposition, at 163.  That Scaglione, who was not Plaintiffs' supervisor, could not recall if there were issues with tardiness does not contradict MSC's evidence that Plaintiffs had tardiness or absenteeism issues.

[87]     *Id.*

[88]     Plaintiffs also again argue that Rinaldini was not disciplined for leaving work for a family emergency, while Pearcy was disciplined for a similar or the same infraction. Response, at 52.  However, as noted above, *see supra* p. 35, Plaintiffs have failed to establish Rinaldini left work without notifying management, that he was not disciplined or, in any event, that he was similarly situated to Pearcy.

Ruiz to Magnani on January 24, 2007, in which she states that though Peter Siega, Pearcy's supervisor at the time, assured her that Pearcy could be "a productive, positive team player for MSC, we'd like to assess in another two weeks."[89]  Siega, however, was only one of three supervisors Pearcy had while with MSC.   Indeed, it appears that Pearcy had only worked under Siega for approximately three weeks at the time.[90]

Plaintiffs also make the unsupported allegation that Morrison, Collins-Pearcy's supervisor, felt "threatened" by her, and that this might account for his negative review of her performance.  This explanation does not support an unlawful discrimination claim on any of the grounds Plaintiffs assert.  *See Nieto v. L&H Packing Co.,* 108 F.3d 621, 624 (5th Cir. 1997) (holding that an employee's accusation that his employer was "out to get him" because he was successful at "what he was doing," even if true, did not support a discrimination claim because "Title VII ... do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus."); *accord Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 276 (5th Cir. 2008); *see also Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) ( "[S]lights or minor annoyances that often take place at work and that all

---

[89]  Email from Darlene Ruiz to Paolo Magnani of January 24, 2007, Exh. 10 to Response [Doc. # 65-3], at 44 of 50.

[90]  Email from Darlene Ruiz to Paolo Magnani of January 23, 2007, Exh. 10 to Response [Doc. # 65-3], at 47 of 50.  Plaintiffs also rely on Ruiz's testimony that she did not need an additional two weeks to renew Rinaldini's visa after receiving positive feedback from his manager.  *See* Ruiz Deposition, at 132.  This reliance is misplaced. As noted.  Plaintiffs have not established that Rinaldini was similarly situated to Pearcy in job title, job responsibilities, or job tenure, or in his skills or job performance.

employees experience, . . . personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers are not actionable" under Title VII).

Plaintiffs additionally seek to cast doubt on MSC's assertion that Collins-Pearcy wrongly released a container causing MSC to be fined. Nothing in Plaintiffs' cited evidence refutes the fact that the incident occurred and that MSC's management was very concerned about it at the time.

Finally, Plaintiffs cite Scaglione's deposition acknowledgment that she could not say that Plaintiffs had a bad attitude.[91] Scaglione, MSC's Human Resources Director, did not supervise either Plaintiff.[92] Scaglione thus simply lacked any first-hand perceptions about Plaintiffs' on-the-job attitudes.

Plaintiffs have failed to demonstrate through competent, probative evidence that there is a genuine issue of material fact that MSC's stated non-discriminatory reason for not offering Plaintiffs promotions was false. Plaintiffs therefore have not raised a genuine fact issue that MSC's explanations are pretext for discrimination.

In sum, Plaintiffs have failed to establish a *prima facie* case of discrimination under any of their respective protected classes based on MSC's failure to promote them. Even if Plaintiffs were deemed to have established a *prima facie* case, MSC would still be entitled to summary judgment on these claims because Plaintiffs have not raised a genuine issue of

---

[91]      Scaglione Deposition, at 84-85.

[92]      *Id.* at 84. She explained that she "wasn't present" for whatever was causing MSC to describe Plaintiffs as having poor attitudes. *Id.*

material fact that MSC's decision was motivated in part by unlawful discrimination or the stated reason was pretexual.

        **c.**       **MSC's Decision to Not Sponsor Plaintiffs' Visa Applications**

        **Elements of *Prima Facie* Case.—** Plaintiffs argue that MSC's decision to not sponsor them for H-1B work visas was unlawful discrimination based on their various respective protected classes. To establish a *prima facie* case of discrimination, Plaintiffs must demonstrate that (1) they are members of a protected class; (2) they were qualified for the position in question; (3) they were the subject of an adverse employment action; and (4) they were treated less favorably than similarly situated persons who were not members of their protected classes. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). MSC moves for summary judgment on Plaintiffs' visa-based discrimination claims on the grounds that Plaintiffs have not established either the third or fourth prong of the *prima facie* case.

        **Adverse Employment Action.—** The Fifth Circuit employs a "strict interpretation" of the adverse employment action prong of the *prima facie* case in employment discrimination suits. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *see also McCoy v. City of Shreveport*, 492 F3d 551, 559-60 (5th Cir. 2007).[93] To qualify as an "adverse employment action" an action must be must be an "'ultimate employment decision

---

[93] In *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006), the United States Supreme Court abrogated Fifth Circuit decisions holding that adverse employment actions must be "ultimate employment decisions" in retaliation cases. However, the Fifth Circuit, in *McCoy*, 492 F3d at 559-60, held that the "ultimate employment decision" standard still applies in Title VII discrimination cases.

. . . such as hiring, granting leave, discharging, promoting, and compensating." *Brazoria County v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004) (quoting *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995)).   "'Interlocutory or mediate'" employment actions that can lead to ultimate employment decisions, are not, themselves, ultimate employment decisions. *Burger v. Central Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) (quoting *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997) (abrogated on other grounds)).   The Fifth Circuit has held, for example, that "[t]ransferring an employee to a less secure (but otherwise similar) position is obviously an 'interlocutory or mediate decision which can lead to an ultimate decision.'"   *Id.* (quoting *Mattern*, 104 F.3d at 708).

Plaintiffs argue that, where the decision to not sponsor an employee's visa application "is so connected to the termination of the employee[,] it clearly is an ultimate employment decision."[94]   The Court is unpersuaded.   Plaintiffs cite no authority for the proposition that an employer's decision to not sponsor an employee for a work visa is an ultimate employment decision.   Nor has the Court located any such authority.

Further, significantly, Plaintiffs, who have the burden of presenting evidence of a *prima facie* case of discrimination, including that they suffered an adverse employment action, have not produced any competent proof that MSC's decision made it impossible for them to obtain a legal status necessary to continue working for MSC through June, 2007, and beyond.   Although it is true that an H-1B visa requires sponsorship from the employer who seeks to employ the applicant, *see* 8 U.S.C. § 1182(n); 8 C.F.R § 214.2(h)(1)(ii)(B);

---

[94]        Response, at 58.

*Programmers Guild*, 338 F. App'x at 241, Plaintiffs have not presented any competent evidence that they had no other means of legally remaining in the United States of America.[95] Nor have Plaintiffs provided any evidence that their applications for visas would have been successful even if MSC had decided to sponsor them.  Consequently, Plaintiffs have not raised a genuine issue of material fact that MSC's decision to not sponsor them for H-1B visas was an ultimate employment decision.

**Similarly Situated Employees Treated More Favorably.—** Plaintiffs also have failed to establish that they were treated less favorably than similarly situated employees outside their protected classes, the fourth prong of the *prima facie* case of an employment discrimination claim.  To establish this prong, an employment discrimination plaintiff may present "circumstantial evidence that [he] has been treated differently than similarly situated non-members of the protected class."  *Williams v. Trader Pub. Co.*, 218 F.3d 481, 484 (5th Cir. 2000) (citing *Polanco v. City of Austin*, 78 F.3d 968, 977 (5th Cir. 1996)).  To satisfy the "similarly situated" requirement, the situations of the plaintiff and the non-protected class member must be more than similar, they must be "nearly identical."  *Perez v. Tex. Dept. of Crim. Justice*, 395 F.3d 206, 213 (5th Cir. 2004).  To satisfy his burden, a plaintiff, in a termination case, for instance, must demonstrate "'that the misconduct for which she was discharged was nearly identical to that engaged in by a employee [outside the protected class]

---

[95]     Plaintiffs cite only to Pearcy's testimony that the denial of the visas really put Plaintiffs in "a bind," and that their only options were to either go back home," or to find "alternative employment."  Pearcy Deposition, at 146-47.  Pearcy's conclusory statements do not establish that legally Plaintiffs had no avenues available.

whom the company retained.'" *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)).   In addition, other employees' acts of misconduct must be of "comparable seriousness" to that of the plaintiff.  *Warfield v. Lebanon Corr. Inst.,* 181 F.3d 723, 730 (6th Cir. 1999); *Crosby v. Dallas Co.*, 166 F.Supp.2d 525, 530 (N.D. Tex. 2001).  Moreover, the "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decision[]."  *Perez*, 395 F.3d at 209; *see, e.g.*, *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2007); *see also Ramirez v. Gonzales*, 225 F. App'x 203, 207–08 (5th Cir. 2007); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991).  The "similarly situated" inquiry looks to the totality of the circumstances in determining whether an employee is an appropriate "comparator."  *See, e.g.*, *Wyvill,* 212 F.3d at 305 (declining to find "similarly situated" employees who, *inter alia*, had different job duties and different supervisors); *see also Little*, 924 F.2d at 97.

Plaintiffs have not met their burden to identify similarly situated employees outside their protected classes that were treated more favorably.  Plaintiffs attempt to rely on the circumstances of two employees outside their protected classes that Plaintiffs claim were sponsored for renewed work visas.  First, Plaintiffs cite Ruiz's testimony that, "if she remembered correctly," the work authorization of Viviane Fiorentino, a Brazilian female, was renewed.[96]   This reliance is misplaced.  Ruiz later checked and explained in her

---

[96]      Ruiz Deposition, at 119-20.

Declaration that "Fiorentino returned to her home country and did not have her visa renewed."[97]  Fiorentino accordingly was not similarly situated to Plaintiffs.

Plaintiffs also provide evidence that MSC sponsored the visa application of Rinaldini.[98]  Plaintiffs have failed to raise a genuine issue of material fact that Rinaldini was in a situation that was "nearly identical" to Plaintiffs' when MSC declined to sponsor Plaintiffs' visas for their second year at work.  Pearcy surmised that Rinaldini started at MSC at roughly the same time as he did,[99] and that Rinaldini "worked in Customer Services as well.  So a lot of the same positions were similar to what I held."[100]  Pearcy's comments amount to mere speculation about Rinaldini' positions and duties at MSC.  *See Perez*, 395 F.3d at 213.  Plaintiffs cite to no competent evidence that Rinaldini had the same job duties or supervisors as Pearcy, or otherwise was similarly situated to him.  *See Wyvill*, 212 F.3d

---

[97]     Ruiz Declaration [Doc. # 71-4] ("Ruiz Declaration II"), ¶ 5.

[98]     *See* Scaglione Deposition, at 57; Petition for H1-B Non-immigrant Worker, Exh. 6 to Response [Doc. # 65-3], at 9-13 of 50.

[99]     Pearcy Deposition, at 143.

[100]    *Id.*

at 305.[101]   Plaintiffs thus fail to establish the fourth prong of the *prima facie* case of employment discrimination.

**Prextext/Mixed Motive.**— Assuming *arguendo* that Plaintiffs could establish a *prima facie* case of discrimination based on MSC's decision to not sponsor their work visas, MSC would still be entitled to summary judgment on Plaintiffs' non-sponsorship theory because they have failed to show that MSC's stated reason for the decision was pretextual or based on a mixed motive.  As noted, MSC's articulated reason for not sponsoring Plaintiffs for visa applications is that Plaintiffs' "attendance and work performance were substandard."[102]  In an attempt to show that MSC's stated reason for not sponsoring them for work visas is pretextual, or that MSC was motivated in part by unlawful discrimination in reaching this decision, Plaintiffs rely on the same evidence they proffered to rebut MSC's stated reason

---

[101]    In a further attempt to establish the "similarly situated" requirement, Plaintiffs cite Pearcy's testimony, that based on his conversations with Italian employees that lived in his complex, he knew that MSC was sponsoring the work visas of "Ricardo, Francesco, Carrado, [and] Marco." Pearcy Deposition, at 75-76.  Plaintiffs also note Scaglione's testimony that MSC "may" sponsor far more Italians for H-1B visas than other employees. Scaglione Deposition, at 194.  These references to the record, which fail to so much as provide a full name of a comparator employee, are insufficient to raise a genuine issue of material fact that the other employees were in nearly identical situations to Plaintiffs, or that MSC treated other employees more favorably than it treated Plaintiffs.  *See Perez*, 395 F.3d at 213.

[102]    *See supra* pp. 43-45.   MSC states that on February 14, 2007, Magnani decided on the basis of the adverse written comments about Plaintiffs outlined above that MSC would not sponsor Plaintiffs for work visas.  Ruiz Declaration I, ¶ 5; Email from Paolo Magnani to Darlene Ruiz of February 14, 2007, Exh. F to Motion [Doc. # 40-6] ("Based on the feedback you gave me does not seems [sic] we shall renew their Visas.").

for not promoting Plaintiffs.  As discussed in detail above, this evidence is insufficient to rase a genuine issue of material fact on either a pretext or mixed motive theory.

For the foregoing reasons, MSC is entitled to summary judgment on all of Plaintiffs' disparate treatment claims based on MSC's decision to not sponsor Plaintiffs for H1-B visas.

### d.    Discriminatory Discharge

To establish a *prima facie* case of discriminatory discharge, a plaintiff must show that she "(1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for her position, and (4) was replaced by someone outside of the protected class." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007).  Plaintiffs have failed to establish both the third and fourth prongs of the *prima facie* case.  First, Plaintiffs have not shown that they were qualified for their positions at the time of their alleged termination.  It is undisputed that Plaintiffs' work authorizations expired on or about the same date that they allege they were discharged.  Plaintiffs have produced no evidence that they were legally able to work in the United States of America as of this date.  *See Egbuna v. Time-Life Libraries*, *Inc.*, 153 F.3d 184, 187 (4th Cir. 1998) (en banc, per curium) (holding in a Title VII case that "[w]hen the applicant is an alien, being 'qualified' for the position is not determined by the applicant's capacity to perform the job—rather, it is determined by whether the applicant was an alien authorized for employment in the United States at the time in question").

Second, Plaintiffs have failed to produce any evidence that they were replaced by individuals who were not members of their protected classes.  Plaintiffs proffer the

conclusory allegation in their briefing that "the record clearly reveals that MSC replaced Plaintiffs with individuals who were not members of their protected classes. Defendant [sic] replacements was [sic] Ricardo Bozzo."[103] MSC responds with uncontradicted evidence that no one by that name has worked in the Houston office from "2006 to present."[104] Plaintiffs' conclusory argument does not raise a genuine fact issue. MSC is entitled to summary judgment on Plaintiffs' discriminatory discharge claims.

Assuming *arguendo* that Plaintiffs could establish a *prima facie* case of discriminatory discharge, they would still be unable to meet their summary judgment burden because they have not demonstrated through admissible evidence that MSC's stated reason for terminating their employment, that is, that Plaintiffs were not legally authorized to work for MSC in this country at that time, is pretextual *or* that, while true, MSC harbored an additional illegitimate, discriminatory motivation to terminate their employment. Plaintiffs do not dispute that they could not have legally continued their employment at MSC without a visa of some type, or some other change in status, that would have allowed them to work in the United States.[105]

### 4.    Retaliation

MSC next moves for summary judgment on Plaintiffs' retaliation claims under the Texas Labor Code and § 1981. Retaliation claims are decided under a burden-shifting

---

[103]    Response, at 60.

[104]    Ruiz Declaration II, ¶ 4.

[105]    A noted above, Plaintiffs have not shown MSC's decision to not sponsor their visa applications was based on an unlawful motive. *See supra* pp. 52-58.

framework.  *See, e.g.*, *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 754 (5th Cir. 2005).  To establish a *prima facie* case of unlawful retaliation, a plaintiff must show that: (1) the plaintiff participated in an activity protected by Title VII; (2) the employer took an adverse employment action against the plaintiff; and (3) a causal connection exists between the protected activity and the adverse action.  *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)).  If the plaintiff establishes a *prima facie* case, the employer must articulate a legitimate, nondiscriminatory reason for its employment action.  *Id*.  Once the employer does so, the burden shifts back to the plaintiff to establish that the employer's stated reason is a pretext for actual retaliatory purpose.  *Id*.  Plaintiff's ultimate burden is to show that she would not have suffered the adverse employment action "but for" her engagement in the identified protected activity.  *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 & n.15 (5th Cir. 2005) (citing, *inter alia*, *Pineda v. United Parcel Serv. Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)).[106]

### a.    Exhaustion

First, the Court holds that Plaintiffs' retaliation claims under the Texas Labor Code are barred as unexhausted.  As noted, to establish a *prima facie* case of retaliation, a plaintiff must show that they engaged in protected activity.  An employee engages in protected activity by either (1) opposing in the workplace any unlawful employment practice under

---

[106]    The *Septimus* court rejected the less stringent a "motivating factor" test.  *Septimus*, 399 F.3d  at 608.

Title VII; or (2) filing a charge of discrimination or otherwise participating in any manner in a Title VII matter.  *See Baker v. American Airlines, Inc.*, 430 F.3d 750, 755 (5th Cir. 2005) (citing 42 U.S.C. § 2000e.).  Here neither Plaintiff checked the "Retaliation" box in their administrative charges, and, more significantly, neither Plaintiff alleged that they engaged in any form of protected activity.  Consequently, Plaintiffs' administrative charges could not reasonably be expected to trigger an administrative investigation of retaliation, and the Court lacks subject matter jurisdiction over these claims under the Texas Labor Code.  *See Poindexter*, 2009 WL 1896071, at *4 .

### b.    Retaliation Merits Analysis

MSC is also entitled to summary judgment on Plaintiffs' retaliation claims under § 1981, which do not require administrative exhaustion.

**Pearcy.—** Pearcy seems to assert a retaliation claim.[107]  Plaintiffs, however, point to no evidence that he ever engaged in any protected activity.  In fact, Pearcy testified that he could not recall ever using the word "race," or invoking his national origin, when he complained to Ruiz about being transferred.[108]  Pearcy cannot, therefore, establish a *prima facie* case, and his retaliation claim fails as matter of law**.**

**Collins-Pearcy: Protected Activity.—** Plaintiffs argue that Collins-Pearcy engaged in protected activity when she complained to Morrison that there were no Blacks in management.  Collins-Pearcy testified that she spoke with Morrison about her "interest in

---

[107]    *See* Third Amended Complaint [Doc. # 32], ¶ 21.

[108]    Pearcy Deposition, at 106-07, 109.

moving up in the company," and "shared with him my observation that — I observed that at the company there were no [B]lack employees in management, and he stated that he's not racist."[109]  Collins-Pearcy repeatedly refers to this exchange by stating that she "complained" to Morrison that there "were no Black employees in management."[110]  However, Collins-Pearcy did not testify that she told Morrison, or anyone else at MSC, that the lack of Blacks in management was the result of discrimination.  *See Spinks v. Trugreen Landcare, L.L.C.*, 322 F.Supp.2d 784, 797 (S.D. Tex. 2004) ("A vague charge of discrimination will not invoke protection under the statute."); *see also Pope v. ESA Servs.*, *Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005) (holding that an employee who noted to his manager that there were no Blacks in district-manager positions, as a preface to expressing his interest in the same position, had not engaged in protected activity because he did not attribute the absence of Black district managers to discrimination).  Nevertheless, taking the evidence in the light most favorable to Plaintiffs as non-movants, the Court assumes that Collins-Pearcy has raised a genuine issue of material fact that she engaged in a protected activity by opposing discrimination in her conversation with Morrison about the lack of Black management-level employees at MSC.

**Collins-Pearcy: Causal Connection.—** Collins-Pearcy fails to establish a causal connection between her conversation with Morrison and any adverse employment action by MSC.  Plaintiffs argue that MSC retaliated against Collins-Pearcy by denying her a

---

[109]    Collins-Pearcy Deposition, at 93.

[110]    *See, e.g.*, *id.* at 92-93.

promotion to management, denying her a promised visa sponsorship, relegating her to the freight cashier department upon her return from her leave of absence, and terminating her employment.[111]   The Court notes that though Plaintiffs argue multiple potential retaliatory acts in their brief, Collins-Pearcy cites only to her testimony in which she complains merely that she was terminated in retaliation for her comment to Morrison.[112]   Her claim of retaliation is therefore limited to her termination.   To establish causation for her retaliation claim, Plaintiffs rely solely on Collins-Pearcy's conclusory opinions in her deposition that she was terminated in retaliation for the comment,[113] on her opinion that she was a "highly qualified employee and I worked well,"[114] and that "[w]henever my supervisor went off on leave, I completed her duties, her responsibilities as well as mine without any assistance."[115] These points are largely Collins-Pearcy's sheer speculation, which is insufficient to meet her burden to show a causal connection between a protected activity and an adverse employment act.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) ("conclusory allegations or unsubstantiated assertions do not meet the non-movant's burden" (quotations omitted)); *see also Eberle v. Gonzales*, 240 F. App'x 622, 629

---

[111]     Response, at 101.

[112]     Response, at 60-61.

[113]     *See, e.g.*, Collins-Pearcy Deposition, at 116.

[114]     *Id.* at 117.

[115]     *Id.*

(5th Cir. 2007) (holding that an employee's subjective belief that he was retaliated against is insufficient to establish the causal link element of the *prima facie* case of retaliation).

Additionally, to the extent that Plaintiffs attempt to rely on temporal proximity to establish a causal link between Collins-Pearcy's conversation with Morrison and any adverse employment action, their reliance is misplaced.  Plaintiffs have not established when Collins-Pearcy's conversation with Morrison occurred.  Indeed, Collins-Pearcy testified that she cannot remember the date other than that it took place before she had her baby in April 2007, and thus presumably before she went on leave in March 2007.[116]  *Id.*  Consequently, Collins-Pearcy does not establish there was temporal proximity between her projected activity and any adverse employment action.

Collins-Pearcy thus points to no evidence of a causal link between her protected activity and the adverse employment actions, and she fails to make out a *prima facie* case of retaliation.

**Pretext: Collins-Pearcy.—** The Court notes, in the interest of completeness, that even if Collins-Pearcy had established a *prima facie* case of retaliation, she has produced no competent evidence whatsoever that MSC's proffered non-retaliatory reason for taking any

---

[116]    *Id.* at 93; *see also* Certification of Health Care Provider Form, Exh. 5 to Response [Doc. # 65-2], at 24 of 26 (noting that Collins-Pearcy's expected delivery date was April 12, 2007).  While "[t]emporal proximity alone . . . can in some instances establish a *prima facie* case of retaliation," *Strong v. University Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (citing *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001)), when the only evidence of the connection between the protected activity and the adverse action is "temporal proximity," the proximity must be "very close."

adverse employment actions against her, that is, her substandard attendance and work performance,[117] is false and thus mere pretext.  It is well settled that an employee's subjective belief that she was subject to retaliation is insufficient to survive summary judgment.  *See, e.g.*, *Septimus*, 399 F.3d at 611 ("Mere speculation" of retaliation cannot establish pretext); *accord Malouse v. Winter*, 338 F. App'x 356, 359 (5th Cir. 2009).  Further, even if Collins-Pearcy had demonstrated close temporal proximity between her purported protected activity and an adverse employment action, that proximity would be her only evidence and the Fifth Circuit is clear that temporal proximity alone is insufficient to rebut an employer's non-retaliatory reason for the action.  *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 656 (5th Cir. 2004).

Collins-Pearcy accordingly has failed to raise a genuine fact issue concerning her retaliation claim and MSC is entitled to summary judgment on that claim.

## C.   **Plaintiffs' Libel Claims**

MSC next moves for summary judgment on Plaintiffs' libel claims.  Plaintiffs' complaint does not specify the statements that form the basis of this claim.  Plaintiffs also failed to respond to MSC's motion on this ground and provide no evidence in support of the libel claims.  When asked at his deposition, Pearcy admitted that he could not identify any libelous statements MSC published about him.[118]  Pearcy's libel claim is dismissed.

---

[117]    *See supra* pp. 43-45.

[118]    Pearcy Deposition, at 106.

Collins-Pearcy testified that her claim is based on statements in MSC's response to her EEOC Charge of Discrimination that she was a "bad worker."[119]  Statements made to the EEOC in the course of an investigation are absolutely privileged.  *See Strickland v. Aaron Rents, Inc.*, 2006 WL 770578, at *7-*8 (W.D. Tex. Mar. 24, 2006) (citing *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982)); *see also Wal-Mart Stores Inc. v. Lane*, 31 S.W.3d 282, 290 (Tex.App.—Corpus Christi 2000, pet. denied) (communications in a judicial proceeding are absolutely privileged, and "[j]udicial immunity extends to statements made in quasi judicial proceedings before governmental executive officers, boards and commissions which exercise quasi-judicial powers").  MSC is entitled to summary judgment on Collins-Pearcy's libel claims.

### D.    Plaintiffs' Fraud Claims

MSC also moves for summary judgment on Plaintiffs' fraud claims.   To prevail on a fraud claim, Plaintiffs must show that (1) MSC made a material representation that was false; (2) MSC knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) MSC intended to induce Plaintiffs to act upon the representation; and (4) Plaintiffs actually and justifiably relied upon the representation and thereby suffered injury. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).  In their response to the MSC's Motion, Plaintiffs' argue that MSC orally committed to sponsor their visas but shortly thereafter changed its mind and decided not to

---

[119]     Collins-Pearcy Deposition, at 188-90.

do so.[120]  Plaintiffs, more specifically, point to Pearcy's deposition testimony that Ruiz and another MSC representative represented to him orally, around March 6, 2007, that MSC would sponsor Plaintiffs' visas for the following year.[121]  Plaintiffs were then informed on March 16, 2007, that MSC would not be sponsoring their applications.[122]  Pearcy testified that he thought it was fraudulent for MSC representatives to make that commitment, and "within such a short period of time for them to have changed their decision."[123]

Fraud requires a showing that the speaker made a false representation knowing it was false or with a reckless disregard for its truth. *See Ernst & Young,* 51 S.W.3d at 577.  There must be evidence that MSC represented to Plaintiffs that it would sponsor their work visas knowing that this representation was false when made. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998) (under Texas law, a promise of future performance constitutes actionable fraud only if "the promise was made with no intention of performing at the time it was made"); *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992) (same).  As noted, MSC cites an email from Magnani to Ruiz on February 14, 2007, stating that it "seems" MSC would not be sponsoring

---

[120]    Response, at 62.

[121]    Pearcy Deposition, at 99-101.

[122]    Scaglione Deposition, at 176.

[123]    Pearcy Deposition, at 100-101.  Pearcy also testified that he believed that MSC indicated at his initial interview that they would sponsor Plaintiffs for visas.  Pearcy elsewhere testified more specifically, however, that MSC at the interview only represented that they do sponsor employees, not that they specifically committed to sponsor Plaintiffs.  *Compare id.* at 101, *with id.* at 35.

Plaintiffs for visas, as evidence that it reached this decision on that date.  As this email was sent several weeks prior to March 6, the date Pearcy claims he was informed that MSC "would" be sponsoring Plaintiffs' visas,[124] there is a fact issue that MSC's March 6, 2007 representation to Pearcy that it would sponsor Plaintiffs for visas was made with no intention of performing that act.

Plaintiffs' fraud claims nonetheless fail because Plaintiffs have not established the fourth element, that is, that they actually and justifiably relied upon this representation and thereby suffered injury.  *See Ernst & Young,* 51 S.W.3d at 577.  There is no dispute that Plaintiffs had an at-will employment relationship with MSC.  "A promise to provide employment which is subject to termination at any time or for any reason does not provide any assurances about the employer's future conduct, and does not provide a basis for detrimental reliance as a matter of law."  *Collins v. Allied Pharmacy Mgt., Inc.*, 871 S.W.2d 929, 937 (Tex.App.—Houston [14th Dist.] 1994, no pet.).  Accordingly, Plaintiffs have failed to show that any reliance they placed on any representations MSC made about their work visas applications was justifiable.

Even accepting Plaintiffs' version of events as true, only ten days elapsed from the date MSC made an allegedly false representation to Plaintiffs that they would be sponsored for visas, and the date MSC informed Plaintiffs that they would not, in fact, be so sponsored.

---

[124]    *See* Motion, at 4; Ruiz Declaration I, ¶ 5; Email from Paolo Magnani to Darlene Ruiz of February 14, 2007 [Doc. # 40-6].  MSC has produced no evidence contradicting Pearcy's testimony that he was informed on March 6, 2007, that MSC would be sponsoring Plaintiffs for work visas for the following year.

Plaintiffs have failed to produce any evidence, or even argument, that they suffered any injury during or arising from their 10-day reliance on MSC's representation.  MSC is entitled to summary judgment on Plaintiffs' fraud claim.

## IV.   CONCLUSION

For the forgoing reasons, the Court concludes that MSC is entitled to summary judgment on all of Plaintiffs' claims.  MSJ is entitled to summary judgment on Collins-Pearcy's FMLA interference and retaliation claims because Collins-Pearcy has failed to raise a genuine issue of material fact that she was an eligible employee under the Act or that MSC should be equitably estopped from asserting her status as an ineligible employee.  Collins-Pearcy's disparate impact claim under the Texas Labor Code claim fails because it was not exhausted.  Pearcy's disparate impact claim fails because he has not established a causal link between any specific, facially neutral employment policy and an actionable disparity based on one of his protected classes.  Plaintiffs did not exhaust their race-based hostile work environment claim under the Texas Labor Code, and have not raised a fact issue that they were subjected to such an environment under their § 1981 claim.  Plaintiffs have not met their burden to show that they were subjected to severe or pervasive harassment based on their race.  MSC is entitled to summary judgment on Plaintiffs' disparate treatment claims, based on all of their respective protected classes, because Plaintiffs have not produced evidence sufficient to establish a *prima facie* case of discrimination for any of those claims.  Further, Plaintiffs have not raised a genuine issue of material fact that MSC's stated reasons for taking any adverse employment actions against them were pretextual or based on a mixed

motive.  MSC is also entitled to judgment as a matter of law on Plaintiffs' retaliation claims.

First, Plaintiffs' retaliation claims under the Texas Labor Code are barred for failure to

exhaust.  Plaintiffs' § 1981 retaliation claims also fail; Pearcy has not raised a genuine issue

of fact that he engaged in protected activity, and Collins-Pearcy has not demonstrated a

causal connection between her alleged protected activity and any adverse employment

decision.  Further, both Plaintiffs fail to show that MSC's stated reasons for any purported

retaliatory employment decisions were pretextual.  Plaintiffs have also failed to produce

evidence sufficient to raise a genuine issue of material fact to support their libel claims.

There is no evidence that MSC published any non-privileged, defamatory statements about

Plaintiffs.  Finally, MSC is entitled to summary judgment on Plaintiffs' fraud claims because

Plaintiffs have failed to raise a genuine issue of material fact that they justifiably relied to

their detriment on any intentional misrepresentation by MSC.  It is therefore

      **ORDERED** that Defendant MSC's Motion for Summary Judgment [Doc. # 39] is

**GRANTED** in all respects.

      The Court will issue a separate Final Judgment.

      SIGNED at Houston, Texas this **22nd** day of **March, 2010**.



Nancy F. Atlas
United States District Judge